Robert Forrest **WEILER**, d/b/a Pot Luck I, Plaintiff,

v.

Cleo **CARPENTER**, Jay R. Dickenson, Eddie Fowler, Tom Harden, Gordon Roswell and Pat Sandoval, Commissioners of the City of Clovis; Frank A. Murray, Jr., Mayor of the City of Clovis; and Nelson Worley, Chief of Police for the City of Clovis, Defendants.

Civ. No. 80–637–JB.

United States District Court, D. New Mexico.

Feb. 11, 1981.

---

Freedman, Boyd & Daniels, Nancy Hollander, Albuquerque, N. M., for plaintiff.

Harry L. Patton, City Atty., City of Clovis, Clovis, N. M., for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS ACTION for declaratory relief is brought pursuant to 28 U.S.C. § 2201 and § 2202. At issue is the constitutionality of an ordinance enacted by the City of Clovis regarding drug paraphernalia. Plaintiff Robert Weiler, doing business as Pot Luck I [hereinafter Pot Luck I], has leveled serious constitutional challenges to the ordinance asserting, in part, that the ordinance violates the First and Fourteenth Amendments to the United States Constitution. For reasons more fully set out below, the Court finds that the statute is unconstitutionally vague, overbroad, and violative of First Amendment freedoms.

A Federal District Court, more so than any other, must remain ever vigilant against constitutional encroachment. Social problems, serious as they are, cannot be solved by diminution of the rights guaranteed by our Constitution. To be sure, drug abuse is a problem of pressing proportions. Far more important, however, is continued allegiance to the historical guarantees of the Constitution. These guarantees have been long in the making, and cannot be abdicated or lessened to simplify solutions to social ills. All too often, erosion of basic principles begins with the loftiest of intentions. Such is the case the Court today decides.

Riddled with constitutional infirmities, the ordinance sacrifices constitutionality for expedience, safeguards for ease of enforcement, and fair notice for arbitrary opinion. Were the intrusion much less than is herein presented, the Court's task would be the same, for even the most minimal intrusion of human rights must undergo rigid scrutiny. Faithful adherence to constitutional principles, not short-term sacrifice for expeditious handling, is paramount. It is with this constitutional perception that the Court decides this case.

The ordinance enacted by the City of Clovis [hereinafter referred to as the ordinance] is among the progeny of the Model Drug Paraphernalia Act [hereinafter the Model Act], drafted by the Drug Enforcement Administration of the United States Department of Justice.[1] It sets forth, at considerable length, definitions of "drug paraphernalia" and factors to be used in determining what constitutes "drug paraphernalia." *Inter alia*, the Model Act prevents use, possession with intent to use, manufacture, delivery, or advertisement of drug paraphernalia under certain circumstances. Penalty sections are present, along with a civil forfeiture and severability provision.

As expected and intended, state and local governments across the country began to enact ordinances based in whole or in part on the Model Act. These enactments have been everywhere subject to constitutional challenge, with differing results among the Federal District Courts. At the time of this opinion, the one Circuit Court of Appeals that has dealt with the issue held a local "drug paraphernalia" ordinance unconstitutional. *Record Revolution v. City of Parma*, 638 F.2d 916 (6th Cir. 1980).

The factual and procedural history of this case is simple. The City of Clovis enacted an ordinance, No. 1150–80, based on the Model Act.[2] Pot Luck I is a retail business within the City of Clovis, and routinely retails a great many of the items that the ordinance would define as "drug paraphernalia." Pot Luck I would be a major, if not the sole, recipient of the ordinance's excesses.

Confronted with the ordinance, Pot Luck I faced two options: close the business and remove its inventory, or remain in business, facing criminal prosecution and forfeiture of property. Pursuant to Fed.R.Civ.P. 65, Pot Luck I sought a temporary restraining order and a preliminary injunction against the ordinance. This Court issued a temporary restraining order on August 4, 1980, restraining the City of Clovis from enforcing the ordinance. Oral argument was heard on August 12, 1980, resulting in the Court's issuing a preliminary injunction against enforcement of the ordinance. At that time, the Court noted the substantial probability that the ordinance would be found to violate the Fourteenth Amendment to the United States Constitution. By recent stipulation of the parties, the trial on the merits was consolidated with the preliminary injunction hearing of August 12, 1980. Both parties agree that all exhibits, testimony, and pleadings up to the date of that hearing constitute the entire record of this matter. This stipulation brings the case to a posture where declaratory relief is appropriate. The Court now turns to an analysis of the ordinance.

By its clear terms, the City of Clovis ordinance seeks to make criminal virtually all conduct related to its definition of "drug paraphernalia." Section 1 of the ordinance reads in part as follows:

Section 1. *Definition.* The term "drug paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance as defined in the Controlled Substances Act (§§ 30–31–1 to 30–31–40,

1. The Court notes that the DEA's promulgation of the Model Act, ostensibly to provide guidance to local governments, has resulted in the enactment of numerous "drug paraphernalia" ordinances across the United States. These ordinances are, of course, based in whole or part on the Model Act. Undoubtedly, the DEA's perception of such numerous enactments is assistance in its mission to enforce the federal drug laws and intercept controlled substances.

2. The Court intends no disparagement of Clovis' good faith effort to address a serious condition. Drug abuse is no less pressing locally than nationally, and the City of Clovis is to be commended for its earnest effort to reduce the incidence of drug abuse.

NMSA 1978 [as the same now exists or as the same may be from time to time amended hereafter]). It includes, but is not limited to:

(1) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(2) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;

. . . . .

(7) Separation gins and sifters used, intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining marijuana;

(8) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances;

(9) Capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances;

(10) Containers and other objects used, intended for use, or designed to use in storing or concealing controlled substances;

(11) Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injected controlled substances into the human body.

(12) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body such as:

(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(b) Water pipes;

(c) Carburetion tubes and devices;

(d) Smoking and carburetion masks;

(e) Roach clips: meaning objects used to hold burning material such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(f) Minature cocaine spoons and cocaine vials;

(g) Chamber pipes;

(h) Caruretor pipes;

(i) Electric pipes;

Following this definitional list, the second part of Section 1 sets out fourteen factors a "court or other authority should consider, in addition to all other logically relevant factors," "in determining whether an object is 'drug paraphernalia.'" Highlights of these factors include statements by an owner or anyone in control of the object regarding its use, prior convictions, advertising on both the local and national level, and any "legal" uses an object may have. The sixth listed factor deserves independent citation.

(6) Direct or circumstantial evidence of the intent of an owner, or if anyone in control of the object, to deliver it to persons who he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Act should not prevent a finding that the object is intended for use, or designed for use as drug paraphernalia;

Section 2 provides a penalty for possession of "drug paraphernalia"; Section 3 provides a penalty for manufacture or delivery of "drug paraphernalia"; Section 4 bans advertisement of "drug paraphernalia"; Section 4A provides for civil forfeiture of "drug paraphernalia"; and Section 5 anticipates unconstitutionality by providing for severability of any portion of the ordinance held invalid.

The Due Process Clause of the Fourteenth Amendment requires that a law be neither vague nor overbroad. Commendable though its purpose be, a criminal enactment must not violate these constitutional principles. The requirement that a law not be vague means that a criminal enactment must be sufficiently definite so as to provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for

"no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harris,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954).

To be constitutional, therefore, the vagueness doctrine requires that an ordinance give persons with common intelligence notice of two criteria: the persons covered by the ordinance and the conduct proscribed by the ordinance. *Colautti v. Franklin,* 439 U.S. 379, 390–91, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979). No less can be required, since vague statutes stand in contradiction to basic tenets of our American scheme of justice. As the Supreme Court stated in *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972):

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. [footnotes deleted]

Stated simply, due process requires that a criminal enactment give fair notice or warning of what is prevented. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the state commands or forbids." *Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939).

The true evil of a vague statute/ordinance lies in the impossibility of precise interpretation by those charged with its enforcement. When standards of guilt are not sufficiently ascertainable, the result is arbitrary, erratic, and discriminatory arrests, prosecutions, and convictions. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). When a statute lacks the requisite constitutional precision, there is a very real danger that the law-making function is delegated "to the moment-to-moment judgment of the policeman on his beat." *Gregory v. City of Chicago,* 394 U.S. 111, 120, 89 S.Ct. 946, 951, 22 L.Ed.2d 134 (1969) (Black, J., concurring). In such an instance, the legislative body has done no more than abdicate its policy-making function to the caprices of policemen, prosecutors and juries—a result wholly inconsistent with the American system of justice. *Smith v. Goguen,* 415 U.S. 566, 575, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford, supra.*

The other applicable due process standard in determining the ordinance's constitutionality is overbreadth. Even though a statute be sufficiently definite, it may offend the constitutional principle that

> "... a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms."

*NAACP v. Alabama,* 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed.2d 325 (1964). A statute/ordinance is overbroad when it sweeps innocent or constitutionally protected conduct within its ambit. *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Persons may be prevented from engaging in constitutional or otherwise lawful activities because of the ordinance's chilling effect on these protected freedoms.

It is against this constitutional background that the Clovis ordinance must be measured. Section 1, which attempts to define "drug paraphernalia" as objects "used," "intended for use," or "designed for use," is patently unconstitutional.

842

The term "intended for use" is so vague and indefinite as to be no rule or standard at all. *A. B. Small Co. v. American Sugar*, 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925). The first serious shortcoming of the ordinance is that an owner, or anyone in control of "drug paraphernalia," can be liable for failing to divine a *purchaser's* intent with regard to an item. Stated another way, the determinative element in defining "drug paraphernalia" is the intent of someone other than the person to be charged with the ordinance violation. Reading the definition of "drug paraphernalia" together with the "reason to know" standard, the ordinance fares no better. Consider the following hypothetical situation. A salesclerk, working in a large grocery store, sells plastic sandwich bags to dozens of customers daily. Plastic sandwich bags fall into the definition of "drug paraphernalia" if they meet the "intended for use" standard. It is probable, even likely, that one or more of those plastic sandwich bags is intended for illicit drug use by the purchaser. The Court cannot fathom how the clerk could determine which purchaser intended the bags for illicit use. Would the purchaser's manner of dress, type of speech, length of hair, polite manner, or personal unkemptness be instructive? Should factors extraneous to the purchaser be considered, such as number of bags purchased, whether the purchaser is alone or with companions, whether the bags were purchased separately or with other items, or the proximity of the store to areas such as a university? Does the clerk then independently evaluate all of the above elements, consistent with the clerk's intelligence, common sense, and relative sophistication or naivete with drug use? Obviously, it simply cannot be determined what would create a reasonable belief in the mind of the clerk as to the purchaser's intent. Not only must the clerk guess at each and every purchaser's intent; he must also run the risk that his determination of a purchaser's "innocent" intent may be different than a police determination. *Cf. Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The vagueness has thus created the potential for arbitrary and discriminatory arrest. Suppose, in the above hypothetical, that a plainclothes police officer observed all of the sales the clerk made. If at any time the police officer felt the purchaser intended to use the bags illicitly, under the ordinance he could immediately arrest the clerk for making the sale. The sole basis for the arrest would be the officer's opinion as to the purchaser's intent. Innocent as the clerk may be, he/she is arrested for failing to mystically divine the purchaser's intent; or, for failing to divine how the police officer will determine the purchaser's intent. The *police officer* determines, independent of any guideline, what constitutes a violation of the ordinance. The net cast by the Clovis ordinance is "large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *Papachristou v. City of Jacksonville, supra*, 405 U.S. at 165, 92 S.Ct. at 844. An ordinance that does no more than unconstitutionally increase the arsenal of police simply cannot stand. *Id.*

It is also unclear, in the above hypothetical, the extent to which responsibility for the clerk's determination could be imputed to the owner and/or manager of the store. In any event, as if that were not enough, arrest would trigger initiation of the ordinance's civil forfeiture provisions for "drug paraphernalia."

As the above discussion makes clear, any potential seller of objects that might be deemed "drug paraphernalia" will find it impossible to determine whether the objects are "intended for use" in drug related activities. This leads to a second fatal flaw in Section 1, that is, that intent may be inferred based solely on possession. Certainly the most important consideration in determining intent under the ordinance will be possession of an object somehow characterized as "drug paraphernalia." Since the ordinance is demonstrably incapable of specifying what constitutes "drug paraphernalia," the phrase "intent to use" means no more than possession constitutes intent.

No great imagination is required to appreciate the danger that persons with no intent to violate the ordinance, and who honestly believe they are not violating the Act, can still be arrested because of mere possession.

For example, would the sale of plastic sandwich bags in Pot Luck I be demonstrably different than in the grocery store? Would a salesclerk's determination of intent be more or less sound simply because of the difference in the retail nature of the stores? Neither question can be answered in the affirmative.

As to the question of overbreadth, this ordinance sweeps far too broadly. It is an attempt to regulate articles which have a myriad of legal uses, as well as the potential for illegal use. In short, the Clovis ordinance "makes criminal activities which by modern standards are normally innocent." *Papachristou v. City of Jacksonville, supra*, 405 U.S. at 156, 92 S.Ct. at 839.

The phrase "designed for use" suffers the same constitutional infirmities outlined in the above discussion. To this end, the Court finds persuasive the analysis conducted by a three-judge court in *NORML v. Sendak*, No. TH 75–142–C (S.D.Ind., 2/4/80) (Swygert, Cir. J., presiding):

> "It is unclear what is meant by an instrument 'designed' for drug use. The term 'designed' could signify only devices that have no use or function other than as a means to ingest a controlled substance. Alternatively, 'designed' could include any devices that have a legitimate function but could be used for ingestion of drugs. That is, the term 'designed' could sweep into the definition of paraphernalia any device that could be altered from its normal function to become a makeshift drug device, such as a paper clip, tie bar, hand mirror, spoon, or piece of aluminum foil. The definition 'designed for drug use' gives no hint to those attempting to comply with [the ordinance] what is included in the definition.
>
> "The definition of paraphernalia also fails to answer the question, ' "designed" by whom?' The statute may be limited to instruments designed by the manufacturer for drug use. The crucial problem is that objects arguably within the scope of the statute include many instruments that can be used for legitimate purposes as well as for the ingestion of drugs....
>
> "... One cannot tell in advance whether a paper clip, hand mirror, teaspoon or corncob pipe will be labeled paraphernalia. Whether an item is paraphernalia will depend on the characterization given by the arresting officer, deputy prosecutor, or judge. In addition to the lack of notice given to those subject to the statute, this broad definition of paraphernalia is not sufficiently explicit to prevent arbitrary or selective enforcement...."

*See also Record Revolution v. City of Parma, supra* at 932–933.

The record in the present case is utterly devoid of any evidence which would establish a unique design(s) for "drug paraphernalia." As the Eighth Circuit has observed, the type of object that can potentially be used as "drug paraphernalia" knows no limits beyond the creativity of the user. *Geiger v. City of Eagan*, 618 F.2d 26, 29 (8th Cir. 1980).

The list of things which the ordinance defines as "drug paraphernalia" have a multitude of legal uses. Items such as alligator clips, paper clips, tweezers, miniature spoons, small scales, pipes, mirrors, or razor blades do not have design characteristics that distinguish their unlawful use.

The description of such items does not provide the requisite notice as to what items are within the ordinance's reach. Further, since innocent objects are swept within the ordinance's reach, the statute is overbroad. *NAACP v. Alabama, supra.*

No salvation for the vagueness of the definition section can be found in the list of "logically relevant factors." As previously discussed, the vagueness is not cured by insertion of a "should reasonably know" standard. Moreover, a plain reading of the statute indicates the strong possibility of guilt by association. As the Sixth Circuit has stated:

The factors include the proximity in time and space to a direct violation or to the presence of controlled substances, the statements of others, and the advertising of others.

In short, the ordinances permit events beyond the control of the retail owner to determine his guilt. The danger is that the ordinances could be applied to make a crime out of constitutionally protected or innocent conduct because of the actions or statements by persons other than the defendant. It is well established that guilt must be based on personal action, statements, or knowledge, not on association with other persons suspected of criminal conduct.

*Record Revolution v. City of Parma, supra* at 933. *See Sawyer v. Sandstrom,* 615 F.2d 311, 316–17 (5th Cir. 1980); *Cf. United States v. Falcone,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940).

Finally, the factors encourage selective enforcement. One of the factors to be considered is "(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, . . . ." The determination as to who might be "a legitimate supplier of like or related items to the community" rests wholly on the opinion of law enforcement personnel. Clearly, a business legitimate in all respects could be singled out for prosecution by virtue of an *ad hoc* determination by a law enforcement officer. "Laws, that is valid laws, are to be made by representatives chosen to make laws for the future, not by police officers whose duty is to enforce laws already enacted and to make arrests only for conduct already made criminal." *Gregory v. Chicago, supra,* 394 U.S. at 120, 89 S.Ct. at 951.

The final constitutional challenge rests on First Amendment grounds. Section 4 reads as follows:

Section 4. *Advertisement of Drug Paraphernalia.* It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the adertisement, in whole or in part, is to promote the sale of objects designed or intended for use as drug paraphernalia.

"Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, and for what reason, and at what price." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 765, 96 S.Ct. 1817, 1827, 48 L.Ed.2d 346 (1976). As is apparent, the speech herein involved is commercial speech. The controlling case in this regard is *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), where the Supreme Court stated:

In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

The first inquiry is whether the speech the ordinance seeks to reach is protected. Having concluded that this ordinance is vague and overbroad, the items that could be advertised are not, in and of themselves, concerned with unlawful activity. Consequently, the first part of the test is met. Secondly, the interest of the citizenry in receiving information about "drug paraphernalia" must be matched against Clovis' interest in preventing the sale of "drug paraphernalia" within its city limits. On balance, a municipality's interest in preventing drug abuse, by directly regulating the advertising of "drug paraphernalia," is substantial. The ordinance appears to advance this interest. The final inquiry, how-

ever, is fatal to the ordinance. The ordinance is far too extensive. First, it prevents advertisement in any printed media *anywhere*, whether inside or outside of the Clovis city limits. It is clearly unconstitutional to attempt to ban all information regarding "drug paraphernalia" originating outside the city's borders. Clovis does not have a legitimate interest in preventing information about "drug paraphernalia," that originates in other towns or cities, from reaching its citizenry. *Bigelow v. Virginia*, 421 U.S. 809, 824–25, 95 S.Ct. 2222, 2234, 44 L.Ed.2d 600 (1975). It is also unclear to the Court precisely how Clovis intends to enforce the advertising ban outside its own city limits. Obviously, the effect of the ordinance is to reach farther than the city of Clovis' territorial limits. Such a grand design is far more extensive than would meet its governmental purpose. The Court thus concludes that the ordinance violates the First Amendment to the Constitution.

As to the severability provision, it was indeed wise of the Model Act drafters to foresee the Model Act's unconstitutionality and to provide therefor. This Court cannot create a constitutional construction of an ordinance when the ordinance does not admit of such a construction. *See High Ol' Times, Inc. v. Busbee*, 621 F.2d 135 (5th Cir. 1980). The problems of vagueness and overbreadth run the length and breadth of the ordinance. It is, quite simply, akin to using an axe for an operation that requires a finely-honed scalpel. No amount of judicial surgery could save this ordinance, nor will this Court attempt to do so.

Having thus concluded that the ordinance violates the First and Fourteenth Amendments to the United States Constitution, it is not necessary for the Court to address the commerce clause question. The ordinance is hereby declared unconstitutional, and the City of Clovis is permanently enjoined from enforcing the ordinance.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED that:

1. The City of Clovis ordinance is in violation of the First and Fourteenth Amendments to the United States Constitution, and is, therefore, declared unconstitutional; and

2. The preliminary injunction issued on August 12, 1980, is now made permanent, and the City of Clovis is permanently enjoined from enforcement of the ordinance.