HEJIRA CORPORATION, d/b/a Budget Records & Tapes, Inc., et al., Plaintiffs-Appellees,

v.

J. D. MacFARLANE, in his official capacity only as Attorney General, State of Colorado, et al., Defendants-Appellants.

No. 80–2062.

United States Court of Appeals, Tenth Circuit.

Argued Jan. 17, 1981.

Decided May 5, 1981.

Rehearing Denied June 1, 1981.

David K. Rees, Asst. Atty. Gen., Denver, Colo. (J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., J. Stephen Phillips, First Asst. Atty. Gen., Denver, Colo., with him on the brief), for defendants-appellants.

Arthur M. Schwartz, Arthur M. Schwartz, P. C., Denver, Colo. (Bradley J. Reich, Arthur M. Schwartz, P. C., Denver, Colo., with him on the brief), for plaintiffs-appellees.

Before SETH, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This declaratory action was instituted by a number of dealers in drug paraphernalia. They sought a judgment declaring the Colorado Drug Paraphernalia Act invalid—in violation of the Constitution of the United States.

House Bill No. 1190 became law on or about July 1, 1980. Five days before this date (when House Bill No. 1190 was to become effective) the plaintiffs, all of whom are dealers in drug paraphernalia, brought suit in the United States District Court for the District of Colorado, naming as defendants the Attorney General of the State of Colorado and certain district attorneys, sheriffs and police chiefs. The plaintiffs sought declaratory relief which would declare House Bill No. 1190 unconstitutional, and sought, in addition, injunctive relief which would restrain the enforcement of the Colorado Drug Paraphernalia Act.

On September 5, 1980, the trial court held that the definition of "drug paraphernalia," which was contained in the Act, was unconstitutionally vague, and based upon that conclusion the court granted the plaintiffs' request for injunctive relief. The court rejected the plaintiffs' other constitutional attacks. The defendants filed their notice of appeal within the time allowed under the law.

It is impossible to determine the validity of the Colorado Drug Paraphernalia Act by reference to any particular provision thereof, or anything less than the total Act. Hence, the text of this Act is appended to this opinion. Because various sections will be considered we shall describe these provisions.

The legislative provision which is contained in Section 12–22–501 finds and declares that the possession, sale, manufacture, delivery or advertisement of drug paraphernalia results in the legitimization and encouragement of the illegal use of controlled substances by making the drug culture more visible and enticing, and that the ready availability of drug paraphernalia tends to promote, suggest, or increase the public acceptability of the illegal use of controlled substances. It is further stated that the purposes of part 5 of the Act are to promote the public peace, health, safety and welfare by prohibiting possession, sale, manufacture, and delivery or advertisement of drug paraphernalia, and to deter the use of controlled substances by controlling the drug paraphernalia associated with their use.

Section 502 of the Act defines a controlled substance as being a narcotic drug, the same as defined in Section 301, or dangerous drug, as defined in Section 403, and also defines drug paraphernalia as any machine, instrument, tool, equipment or device which is primarily adapted, designed and intended for one or more of the following: to introduce into the human body any controlled substance under circumstances in violation of the laws of this state; to enhance the effect on the human body of any controlled substance under circumstances in violation of the laws of this state; to conceal any quantity of any controlled substance under circumstances in violation of the laws of this state; to test the strength, effectiveness or purity of any controlled substance under circumstances in violation of the laws of this state. The section sets forth eleven factors which the court may consider, in addition to other relevant factors, in determining whether an object is drug paraphernalia. Included are:

(1) statements by an owner or by anyone in control of the object concerning its use;

(2) the proximity of the object to controlled substances;

(3) existence of any residue of any controlled substances on the object;

(4) direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows intend to use the object to facilitate a violation of part 5.

(5) instructions, oral or written, provided with the object concerning its use;

(6) descriptive materials accompanying the object which explain or depict its use;

(7) national or local advertising concerning its use;

(8) the manner in which the object is displayed for sale;

(9) whether the owner or anyone in control of the object is a supplier of like or related items in the community for legal purposes, such as the distributor or dealer of tobacco products;

(10) existence and scope of legal uses for the object in the community;

(11) expert testimony concerning its use.

Finally, that section directs that in the event a case is brought pursuant to part 5 and is tried before a jury, the court shall hold an evidentiary hearing on issues raised pursuant to this section, such hearings to be conducted *in camera.*

Section 504 describes how one commits a violation of the statutory mandate of anti-possession of drug paraphernalia: One violates this section if he possesses drug paraphernalia and intends to use it under circumstances in violation of the laws of this state.

Section 505 proscribes the manufacture, sale or delivery of drug paraphernalia, and states that any person who sells or delivers, possesses with intent to sell or deliver, or manufactures with intent to sell or deliver, equipment, products or materials intending that such equipment, products or materials will be used as drug paraphernalia, commits a class 2 misdemeanor, and is subject to punishment as provided in Section 18–1–106.

Section 506 sets forth the penalty for advertisement of drug paraphernalia. This section provides that one who places an advertisement in a newspaper, magazine, handbill or other publication, and who (in doing so) intends to promote the sale in this state of equipment, products or materials designed and intended for use as drug paraphernalia commits a class 2 misdemeanor, and becomes subject to punishment as provided in Section 18–1–106.

To summarize:

Section 501 of the Act covers the legislative declaration concerning control of drug paraphernalia;

Section 502 defines drug paraphernalia;

Section 503 lists eleven factors which the court may consider in determining whether an object is drug paraphernalia;

Section 504 makes it an offense to possess drug paraphernalia with the intention to use it in violation of the laws of this state;

Section 505 makes it an offense to manufacture, sell or deliver drug paraphernalia with the intent that the items be used as drug paraphernalia; and,

Section 506 proscribes advertisement of items designed and intended for use as drug paraphernalia.

The trial court ruled, first of all, that the plaintiffs herein, merchants for the most part, did not have standing to represent the users or purchasers of the items here in question. The court also ruled, however, that the statute is unconstitutionally vague in at least two respects. The standard "primarily adapted, designed and intended" was held not to be an adequate one. The court also concluded that the eleven standards set forth for use by the court did not provide either notice to possible violators, nor to police officers and other enforcement officers, what factors were to be considered in ascertaining whether there had been a violation of the statute.

Generally, these are the points which this court must consider in a determination of whether the trial court erred in its conclusions.

The points advanced by the Attorney General are set forth in a summary of the argument, which in effect declares:

The Colorado Drug Paraphernalia statute is not vague.

It provides defendants with fair warning of forbidden conduct and contains sufficient standards to guard against arbitrary or discriminatory enforcement. Moreover, as all the crimes defined in the

statute contain specific intent as an element, the statute cannot be termed vague.

## I.

Do the plaintiffs have standing?

█ The trial court's ruling was that while the plaintiffs have standing, that is, a stake in the outcome sufficient to challenge the Act in their capacities as potential sellers and advertisers of drug paraphernalia, they lacked standing to assert the rights of third parties, that is, the rights of purchasers or possessors of drug paraphernalia. It is true that plaintiffs lack standing to raise issues which are the private rights of potential purchasers and possessors of drug paraphernalia, and which deal with conditions and situations not properly before the court, such as whether the Act may violate the privacy of potential possessors of drug paraphernalia. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). It is not to be denied, however, that the plaintiffs may raise the rights of potential purchasers and possessors of drug paraphernalia insofar as those rights are interrelated with the rights of the plaintiffs, and thus involve questions which are properly before the court. Plaintiffs have standing to dispute the constitutionality of the entire Colorado Drug Paraphernalia Act when attacking the validity of the Act on its face.

The case of *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), *rehearing denied,* 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977), is about as similar as a precedent could be. In *Craig* the question to be decided involved the constitutionality of an Oklahoma statute which prohibited the sale of 3.2 beer to males under 21 years of age, but which permitted sales to females between the ages of 18 and 21. In *Craig* a vendor of the beer was allowed to assert the equal protection claim of males between the ages of 18 and 21, since the statute created legal duties "addressed directly to" such vendors, and the constitutional rights of males between the ages of 18 and 21 would be "diluted or adversely effected" if the

vendor's claim were to fail. *Id.* at 194–195, 97 S.Ct. at 455–456. The Supreme Court pointed out that the vendor was in a position in which it had to heed the statutory discrimination and thus incur a direct economic injury through the constriction on its buyers market, or disobey the statutory command and suffer the sanctions. So, therefore, the vendor had a strong interest in asserting the position that it took in court. Similarly, in the instant case, the Colorado Drug Paraphernalia Act creates duties addressed directly to vendors of drug paraphernalia. By selling paraphernalia to purchasers, vendors violate the Act. Therefore, under the *Craig* rationale, plaintiffs should be allowed to assert the due process claims of prospective purchasers and possessors of drug paraphernalia, since, if plaintiffs' claims were to fail, the rights of prospective purchasers of drug paraphernalia would be diluted or adversely affected. Hence, the interests of potential purchasers and potential sellers in this statute are directly interrelated.

█ We agree, as well, with the finding of the district court that the federal court has jurisdiction over this case. No criminal prosecution, it is true, has commenced as a result of the enforcement of the Act. Nevertheless, the court record clearly shows that plaintiffs face real and genuine threats of prosecution under the Act so as to show the existence of an Article III case or controversy. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Accordingly, this court has jurisdiction to consider the facial validity of the Colorado Drug Paraphernalia Act.

█ One other matter: There is no necessity for abstaining or temporarily dislodging the case and referring it to the state court, because it is not likely that the state court's consideration of the case would either render it unnecessary for federal consideration or substantially modify essential federal constitutional questions. *See,* for example, *Record Revolution No. 6, Inc. v. The City of Parma, et al.,* 638 F.2d 916 (6th Cir. 1980); *High Ol' Times, Inc. v. George*

*Busbee,* 621 F.2d 135 (5th Cir. 1980). We hold, therefore, that this court has jurisdiction to presently consider the merits of the complaint.

### The Purpose of the Act

At the outset, we recognize that the subject matter and object of this statute is to aid in curtailing drug use by prohibiting the sale, possession and advertisement of devices which tend to facilitate, enhance, condone, and render acceptable the use of illegal drugs.

The Drug Enforcement Administration of the United States Department of Justice has drafted the Model Drug Paraphernalia Act, and this apparently has been the model for use by the several states in enacting similar statutes. The Model Act declares:

> The availability of drug paraphernalia has reached epidemic levels. An entire industry has developed which promotes, even glamorizes, the illegal use of drugs by adults and children alike. Sales of drug paraphernalia are reported as high as three billion dollars a year.

In drafting this Act the Department of Justice had the above described problem in mind. Surely the object is laudable, and unquestionably the Colorado General Assembly has the power and authority to enact a statute of this character. *See Geiger v. City of Eagan,* 618 F.2d 26 (8th Cir. 1980). This fact was acknowledged in the district court's opinion, where the court stated:

> The enactment of drug laws are certainly within the police power of the state. * * * [Such laws] go directly to the health, welfare and the public concern for the inhabitants of the State of Colorado. In the General Assembly's exercise of its police power to protect the public health, safety, morals and welfare, the purposes of the Act in question are both constitutionally and logically sound. * * * [T]here is a nexus between the abuse of controlled substances and the glorification of devices which facilitate such abuse. * * * There is a rational relation-ship between these laws and a legitimate government purpose.

### Specifics of the Trial Court's Ruling

The district court struck down the legislation because it found that the Act was vague on its face for two reasons: *First,* because it found the phrase "primarily adapted, designed and intended" insufficient to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited; *second,* because it found that the Act fails to provide explicit standards for those charged with enforcement of the law. The court noted that the words "primarily adapted, designed and intended" had to be considered conjunctively; that the words could not be applied disjunctively. The court noted that while the items may be primarily adapted or designed or intended for the use of illegal drugs, they could not be primarily adapted and designed and intended for such purposes.

The trial court further concluded that while the Act includes eleven enumerated factors to aid in determining whether an object constitutes drug paraphernalia, the legislature failed to state that these examples or guidelines were for law enforcement officials to follow, and thereby, they have allowed the police too much administrative discretion in the enforcement of a penal statute. The court noted that the Model Act provides that the guidelines should be considered by a court *or other authority*.; whereas the Colorado General Assembly has provided that the guidelines were for the use of the court, but has not said that they were available for use by the police or other enforcement authorities. The court indicated that if specific tests had been provided for *law enforcement authorities* to consider, said factors would have constituted guidance on the application of the Act and would have served to minimize the risk of arbitrary and discriminatory enforcement of the Act. *See, Interstate Circuit, Inc. v. City of Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968). The Judge's remarks are to be interpreted as meaning that if the General Assembly had mandated that the police, prosecutors or other author-

ities consider the eleven factors stated in Section 503, his conclusion would have been different.

## II.

Is the definition of drug paraphernalia which is contained in House Bill No. 1190, which definition encompasses "any machine, instrument, tool, equipment or device which is primarily adapted, designed and intended" for one or more of four enumerated purposes, unconstitutionally vague and indefinite?

The trial court was unquestionably correct in its conclusion that the phrase "primarily adapted, designed and intended for use in one of the four enumerated purposes" had to be read in the conjunctive rather than the disjunctive. Therefore to constitute drug paraphernalia under that definition an item must be primarily adapted *and* designed *and* intended for use in one of the four enumerated manners or ways. This phrase in its entirety does not provide objective standards for determining what items fall within the definition of drug paraphernalia. One fault is that terms "adapted" and "designed" conflict with one another. In order to "adapt" an item for use in a particular manner, one has to make the item suitable or fit for a particular use or purpose, to make the item adjust to particular conditions or ways. *See* Third New International Dictionary, 1971 Edition. To *design*, on the other hand, means "to devise or propose for a specific function; to create, plan or calculate for serving a predetermined end." *Designed* is clear in its meaning, which is that the item is predetermined for a particular use. *Adapted* is in conflict with that definition because the word "adapted" means that something which has not been designed for a particular use has to be adapted or changed so that it can be so used. If these terms were given a very narrow meaning, it is possible that they could be reconciled. However, the courts frown on constructing terms in a limited way and thus narrowing the statutory language. *See Hynes v. Mayor and Council of the Borough of Oradell*, 425 U.S.

610, 622, 96 S.Ct. 1755, 1761, 48 L.Ed.2d 243 (1976); *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). The severing of one of the conflicting phrases is a different matter, however. If such action cures the problem and renders the statute constitutional on its face, severance can be carried out.

■ The Colorado statute on severability, CRS 2–4–204 (1973) provides as follows: *Severability of statutory provisions.* If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid, unless it appears to the court that the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court determines that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

This general severability clause applies to a legislative act which does not contain a specific severability provision. *People v. Vinnola*, 177 Colo. 405, 494 P.2d 826 (1972).

■ The test is whether the void provision and the valid provision are essentially and inseparably connected and interdependent, one with the other, so that it cannot be presumed that the legislature would have enacted the valid provisions without the void one. Severance is impossible if the court determines that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent. *Champlin Refining Co. v. Corporation Commission*, 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932); *Buckley v. Valeo*, 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976).

The wording of the statute passes the test in our judgment. The term "adapted" contributes virtually nothing; "designed" is the strong term. It is clear that in requiring that the product should have been de-

signed for a particular purpose legislative intent will be upheld. "Adapted" serves no purpose either by itself or in conjunction with "designed." It can be removed without being missed, and such removal would not hinder the legislative intent of the statute.

Legislative intent is, of course, the final answer. *Colorado Project-Common Cause v. Anderson, et al.*, 177 Colo. 402, 495 P.2d 218 (1972); *Dorchy v. State of Kansas*, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686 (1924). Legislative intent is to be gleaned from the interpretation of the statute as a whole. *R & F Enterprises, Inc. v. Board of County Commissioners*, 606 P.2d 64 (Colo.Sup.Ct. en banc, 1980).

■ Must the portion which is ruled constitutionally invalid be a self contained sentence or a separate section or subsection? The answer is no. *Jones v. Smith*, 474 F.Supp. 1160, 1169 (S.D.Fla.1979). Frequently courts have severed invalid sentences or clauses from a statute, rather than entire sections, in an effort to uphold the constitutionality of the Act in question. *See, e. g., Lipp v. Morris*, 579 F.2d 834 (3rd Cir. 1978); *Moore v. Fowinkle*, 512 F.2d 629 (6th Cir. 1975); *Planned Parenthood Ass'n of Kansas City v. Ashcroft*, 483 F.Supp. 679 (N.D.Mo., 1980). The Colorado Supreme Court has severed a sentence from a statutory section in *Covell v. Douglas*, 179 Colo. 443, 501 P.2d 1047 (1972), *cert. denied*, 412 U.S. 952, 93 S.Ct. 3000, 37 L.Ed.2d 1006 (1973), and has severed words and phrases from a statute in *Shroyer v. Sokol*, 191 Colo. 32, 550 P.2d 309 (1976). *See also, Record Revolution No. 6, Inc.*, supra, where the Sixth Circuit stated that it could have severed the constitutionally invalid phrase in the definition of drug paraphernalia (as stated in the Act with which that court was concerned), and thereby upheld the constitutionality of the remainder of the Act, if the explicit terms of the Act in question had not limited severability to the section describing the substantive offense. 638 F.2d at 931–932. There is no such limiting instruction as to severability in the Colorado Drug Paraphernalia Act.

Accordingly, if severance of the word "adapted" renders the definition constitutional, this court is authorized to sever such a word whereby it would read "primarily designed and intended" rather than "primarily adapted, designed and intended."

### The General Purpose

■ The general intent of the legislature in enacting this statute was to curb the use of illegal drugs by restricting the availability of drug paraphernalia. In our view this legislative intent is fostered and promoted and is not hindered by severing one of two conflicting terms which, when applied conjunctively, only serve to exclude items from falling within the definition of drug paraphernalia because of the difficulty, if not impossibility, of defining an item as both "designed" for use and "adapted" for use with illegal drugs. Since these terms are not so intertwined that the valid term could not stand alone, this court is authorized to sever one of the two conflicting terms. Logic dictates that the word "adapted" be selected, rather than the word "designed," since the same incompatibility which exists between the words "designed" and "adapted" may also exist between the words "intended" and "adapted."

### Meaning of "Designed"

We must, then, answer a further question regarding whether the Act can be upheld if the definition set forth in the statute includes any machine, instrument, tool, equipment or device which is "primarily designed and intended" for one or more of the four enumerated purposes. In so doing, we must ask: what is meant by the term "designed?"

Since the definition of drug paraphernalia in the Model Act includes any equipment, products or materials used, intended for use, or designed for use with illegal drugs, and many of the innumerable drug paraphernalia acts which were enacted in the wake of the Model Act have incorporated the same definition within their respective statutes, the term "designed for use" has been frequently interpreted by the courts.

Those statutes which follow the Model Act, at least in a basic way, have been upheld by a number of district courts. *Florida Businessmen for Free Enterprise v. City of Hollywood*, No. 80–6157 Civ–NCR (S.D.Fla. Aug. 29, 1980); *Delaware Accessories Trade Association v. Gebelein*, 497 F.Supp. 289 (D.Del.1980); *World Imports, Inc. v. Woodbridge Township*, 493 F.Supp. 428 (D.N.J., 1980); *Nova Records v. Sendek*, 504 F.Supp. 938 (D.C.S.D.Ind., 1980); *Mid-Atlantic Accessories Trade Association v. State of Maryland*, 500 F.Supp. 834 (D.Md., 1980). *See also*, the Eighth Circuit case of *Geiger v. City of Eagan, supra*, which indicated that it considered the Model Act to be a properly drawn statute. 618 F.2d at 28, n.4. The only *circuit* court which has specifically considered the constitutionality of an Act which followed somewhat strictly the Model Act has declared the Act unconstitutionally vague and overbroad on its face. *Record Revolution No. 6, Inc. v. City of Parma, supra.* In *Record Revolution* it was held by the Sixth Circuit that the drug paraphernalia act before it was unconstitutional because the term "designed for use" was vague and overbroad and the specific statutory section referring to severability precluded severance by limiting it to the section describing the substantive offense. The court quoted Indiana Chapter, *Norml v. Sendek*, No. TH–75–142–C (S.D.Ind., Feb. 4, 1980), in which the district court discussed the term "designed" in detail and stated:

It is unclear what is meant by an instrument 'designed' for drug use. The term 'designed' could signify only devices that have no use or function other than as a means to ingest a controlled substance. Alternatively, 'designed' could include any devices that have a legitimate function but could be used for ingestion of

drugs. That is, the term 'designed' could sweep into the definition of paraphernalia any device that could be altered from its normal function to become a makeshift drug device, such as a paper clip, tie bar, hand mirror, spoon, or piece of aluminum foil. The definition 'designed for drug use' gives no hint to those attempting to comply with [the ordinance] what is included in the definition.

The reason for the ruling in the Sixth Circuit in *Record Revolution* holding "designed for use" to be overbroad was because the term "drug paraphernalia" could constitute any device that could possibly be used with illegal drugs, and vague because of the "lack of any design characteristics that distinguished lawful purposes from unlawful purposes." *Record Revolution, supra* at 930. The Sixth Circuit stated that if drug paraphernalia was defined in terms of the design, "the definition begins to depend upon the ingenuity or purpose of the purchaser rather than the seller and upon the current practices of the clandestine society of drug users." There are other decisions which have arrived at this same conclusion as was reached in *Record Revolution.* These are *Record Head Corp. v. Sachen*, 498 F.Supp. 88 (E.D.Wis., 1980); *Back Door Records v. City of Jacksonville, et al.*, No. LR–C–80 314 (E.D.Ark., Jan. 8, 1981); *Robert Forrest Weiler v. Cleo Carpenter, et al.*, 507 F.Supp. 837 (D.C.D.N.M., 1981); *Lazy J. Ltd. v. The Borough of State College*, Civ. Action No. 80–1167 (M.D.Pa., Jan. 30, 1981).

Other courts have analyzed the term "designed for use" and have reached contrary conclusions. *See Mid-Atlantic Accessories Trade Ass'n. v. State of Maryland, supra; Robert Brache and Edna Franza v. County of Westchester, et al.*, 507 F.Supp. 566 (S.D. N.Y., 1981).[1] *See also, The Casbah, Inc. v.*

---

1. The *Brache* Court stated as follows:

". . common English usage supports the district court's observation in *Mid-Atlantic* that '[d]esign connotes an intentional act as well as an objective set of characteristics.' The prosecution may have some difficulty proving that a manufacturer intentionally 'designed' for drug use an item which could have others, but that is a different question.

The element of scienter necessary to preserve a law from vagueness adds, by definition, another fact for the prosecution to establish by competent evidence. The drafters of the Model Act sought to eliminate vagueness and transferred intent by requiring the requisite elements of knowledge or intent on the part of manufacturer, seller or user, in order to bring a particular artifact within the defini-

*Charles Thone,* Civ. No. 80–0–271 (D.Neb., Sept. 26, 1980). In *The Casbah* the court held that the term "designed for use" was not vague when read in the context of the entire statute; that the term "refers not to the physical characteristics of an object but to the subjective intent or plan of the person controlling the object." *See also, Delaware Accessories Trade Ass'n. v. Gebelein, supra; Florida Businessmen for Free Enterprise v. City of Hollywood, supra.*

■ The courts have addressed two concerns regarding this term, therefore: overbroadness and vagueness. We call attention to the fact that the word "primarily" before the word "designed" in the Colorado Act serves to restrict the term by requiring that an item must be *primarily* designed for use with illegal drugs in order to constitute paraphernalia. The Colorado legislature eliminated the concern expressed in *Record Revolution* that any item which may conceivably be used with illegal drugs may constitute drug paraphernalia. Therefore, this term, as used in the Colorado Act, is not overbroad. We now turn to the question of whether this term is unconstitutionally vague.

*Vagueness Analysis of the Phrase "Primarily Designed and Intended"*

■ We must consider whether the definition of drug paraphernalia, encompassing as it does items "primarily designed and intended" for one of the enumerated uses, is unconstitutionally vague on its face. To do this we must consider what is meant by vagueness in the context of legislative enactments. Legislative acts involving criminal violations are held to be unconstitutionally vague if, first, they do not provide sufficient notice of the conduct which is proscribed, and, second, they do not provide law enforcement authorities with adequate standards for enforcement of the law. The United States Supreme Court has clearly expressed the constitutional dimensions of the standards to be followed when drafting legislation similar to that before us. *See Grayned v. City of Rockford,* 408 U.S. 104,

108–9, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The Supreme Court said that:

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws often offend several important values. First, because we assume that a man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

■ The requirement that the words of a penal statute be clear and beyond speculation presents a question of real substance. All persons are entitled to be informed as to what the statute commands or forbids. *See Lanzetta v. New Jersey,* 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). It goes without saying that the standards of guilt must be sufficiently ascertainable to prevent arbitrary, erratic and discriminatory arrests and convictions. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). The legislature may not abdicate its policy making functions. It must establish the standards to be followed when enforcing the statute, and do so clearly. *See Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1247–1248, 39 L.Ed.2d 605 (1974).

Our first step when inquiring whether the definition of drug paraphernalia, as amended, is sufficiently precise, is to determine the meaning of the word "designed" contained in the phrase "primarily designed and intended." As previously seen, the

tion of 'drug paraphernalia.' I see no basis for holding that they succeeded in respect of

the phrase 'intended for use,' but failed with 'designed for use.' At 577.

problem addressed by the cases is *whose* intent the term "designed" refers to. Courts have construed that phrase as encompassing the subjective intent of the possessor or seller or the subjective intent of third persons, such as the purchaser of the item. The cases have considered the question of *who* "designed" the item for drug use, and the courts have concluded that the term must encompass a subjective intent on the part of the purchaser or seller in order for the definition to withstand constitutional attack. In *Record Revolution, supra,* therefore, the Sixth Circuit held that since the term "intended" for use referred to the intent of the possessor or seller as the person in control of the object, that phrase was not unconstitutionally vague. However, the Sixth Circuit, in that case, held that the term "designed" for use always referred to the intent of the purchaser rather than to the intent of the one in control of the items, such as the seller when a sale was involved; as a result the Sixth Circuit held the definition of drug paraphernalia void for vagueness.

In order to uphold the validity of a drug paraphernalia statute, therefore, it has been required that the statute enunciate that the person prosecuted for violating the Act must have both intended the item in question to fall within the definition of drug paraphernalia, and intended to commit one of the substantive offenses listed in the Act. Such an analysis is troubling since it is to be remembered that there are two requirements necessary to establish guilt for violating the Colorado Drug Paraphernalia Act. First, the alleged violator must possess, sell or advertise drug paraphernalia; second, the possessor must intend to use the paraphernalia for illegal drug purposes, or the seller must intend for the buyer of the goods to use them for illegal drug purposes. It would seem, then, to be sufficient that the subjective intent, or mens rea, of the possessor or seller is found in the latter element of the offense. So analyzed, the prosecution would have to ask: Looking objectively, is this person possessing or sell-

ing drug paraphernalia? If that question is answered in the affirmative, then the next question would be: looking subjectively, does this person intend to use the paraphernalia for illegal drug purposes or intend for the purchaser to use the paraphernalia for such purposes? Following this reasoning, then, while the definition of drug paraphernalia must be sufficiently narrow to enable possessors and sellers to reach an objective conclusion as to what items are likely to fall within that definition, it would not be necessary that the definition require that the possessor or seller of the item shall have personally designed and intended that the item be used for illegal drug purposes. The intent of the possessor or seller is manifested in the second part of the offense. The possessor or seller may not be penalized for possessing or selling drug paraphernalia unless he has the requisite intent to use it, or for others to use it, for illegal drug purposes. So analyzed, the issue would be whether the words "primarily designed and intended" provide an objective standard for determining whether an item reasonably falls within the definition of drug paraphernalia.

The courts have not tended to follow the latter analysis, however. There is concern that it is difficult to identify drug characteristics that distinguish lawful purposes from unlawful purposes; that the crimes defined in the Act are dependent upon the validity of the definition of drug paraphernalia, and that the intent requirement is found only in the second element of the offense and not the first. To avoid vagueness problems, therefore, the courts have generally required that the statutory definition of drug paraphernalia include a subjective intent on the part of the possessor or seller.

It is well to remember that the Model Act and the Colorado Act are different. In the Model Act the definition of drug paraphernalia is stated in the disjunctive. Thus, the definition of paraphernalia in the Model Act encompasses items "used, intended for

use or designed for use for illegal purposes." An item may constitute drug paraphernalia if any one of the three standards is met; that is, if the item is used, intended for use, or designed for use with illegal drugs, it constitutes paraphernalia. The definition of drug paraphernalia in the Colorado Act, however, is stated in the conjunctive. Thus, an item may only constitute drug paraphernalia if it is intended for use and designed for use in one of the four enumerated ways. Regardless of whose intent the word "designed" refers to, the intent of the possessor or seller is still required by the words *"and* intended."

For the same reason that the intent requirement in the substantive offense sections of the Colorado Act refers to the intent of the possessor or seller, the intent requirement in the definition of drug paraphernalia also refers to the intent of the possessor or seller. The United States Supreme Court favors an interpretation of legislation in a manner which supports its constitutionality. *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 1033, 89 L.Ed. 1495 (1945). When the word "intended" is specifically part of the statutory provision, that word is fairly susceptible of a construction which requires that the intent of the person who sells or possesses would be in violation of the statute. We regard this as the plain meaning of the word, and thus, a federal court reaching such a conclusion does not exceed its authority by construing the word in a narrow, limiting fashion. Due process requires such an interpretation of the word "intended." See *Record Revolution v. City of Parma, supra,* at pages 928–929.

■ Accordingly, in view of the fact that the definition of drug paraphernalia in the Colorado Drug Paraphernalia Act requires intent on the part of a violator, be he possessor or seller, regardless of how the state court construes the term "designed," the statute is not unconstitutionally vague on its face with regard to the issue of subjective intent.

*Are the Standards Sufficient to Guide Enforcement Officers?*

The above, however, does not complete the inquiry. While the definition of drug paraphernalia in the Colorado Act meets the subjective intent requirement, that fact does not end our quest to determine whether the definition meets the constitutional test. It is necessary, in addition, that the Act provide objective standards for determining what items are likely to fall within the statutory definition. Although possessors and sellers of drug paraphernalia may be held to a higher standard of knowledge in determining whether an item which they possess or sell constitutes drug paraphernalia, *Papachristou v. Jacksonville, supra,* 405 U.S. at 162, 92 S.Ct. at 843, such is not true with respect to law enforcement officers. We, therefore, must consider whether House Bill No. 1190 provides explicit standards so that law enforcement officers may not make arbitrary, erratic and discriminatory decisions. See *Grayned v. City of Rockford, supra.*

We acknowledge that it is not necessary for reasonable men to consistently reach the same conclusion in applying objective standards to a given factual situation. Thus, the fact that different minds may reach different results when seeking to determine whether a given object falls within the statutory definition of drug paraphernalia does not render the statute void for vagueness. The Supreme Court in *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 1541, 91 L.Ed. 1877 (1947) said:

> That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense. * * * [T]he constitution does not require impossible standards.

*See also, Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

Notwithstanding the impossibility of defining standards with precision to determine whether a legislative object falls within the statutory definition of drug paraphernalia, the Act must, nevertheless, set

forth sufficient standards to guard against arbitrary law·enforcement. The Colorado Act lists eleven factors to be considered which are sufficiently positive and concrete. It is argued by appellees that these standards are, however, for the *exclusive* use of the court, that they are only to be used by the court in its discretion, and that this results in confusion. We disagree. Why would the General Assembly provide standards for the court's use *only*? It is more logical to conclude that the Assembly intended that the court would ultimately use these standards as part of the definition of the crime. If the court judges by reference to the standards, the enforcement machinery must also follow the standards. Enforcement authorities cannot ignore the definition. Does the fact that the court is said to have discretion in applying the standards render the Act unlawfully vague? We say no. Our view is that the Assembly recognized that some of the standards may not apply in each and every case, and acknowledged that the court must be authorized to deal with this situation. An unchangeable mandate might be lacking in flexibility and workability.

Our conclusion is, then, that the eleven specific standards to be considered when determining whether an item falls within the definition of drug paraphernalia are not for the court's use alone. They were not intended to be withheld from the enforcement officers or anyone else administering or complying with the statute. The ultimate test as to the sufficiency of any cause of action is whether it will stand up in court. Therefore, law enforcement authorities are effectively compelled to work directly with the enunciated criteria if they are to carry out the Act.

We are aware that many of the courts which have considered this statute have tested the statute with a fine tooth comb to ascertain whether a mandate is set forth which *requires* officers to consider the enunciated factors. Some have upheld statutes as not being vague because these factors were listed and law officials were *required* to consider them when identifying drug paraphernalia. See, *The Casbah, Inc. v. Thone, supra,* wherein the court noted that since no objects were per se drug paraphernalia under the Act, a significant reason for finding the Act not unconstitutionally vague was that factors were listed which law enforcement officials had to consider when identifying drug paraphernalia. The fact that factors were listed for law enforcement officials to ·consider when defining drug paraphernalia was relied upon by the courts in *Delaware Accessories Trade Ass'n v. Gebelein, supra,* 497 F.Supp. at 293, and *World Imports, Inc. v. Woodbridge Township, supra,* when upholding the constitutionality of the Acts there under consideration. Similarly, the Act upheld in *Florida Businessmen for Free Enterprise v. City of Hollywood, supra,* also requires law enforcement authorities to consider a list of specific factors. Contra, *Nova Records v. Sendek, supra.*

Affidavits of officers from various districts in Colorado set forth in the record show that there is confusion as to whether particular items constitute drug paraphernalia. Some of the confusion illustrated by the wide variety of conflicting opinions among law enforcement personnel as to what constitutes paraphernalia may be eliminated by removing the word "adapted" from the definition of drug paraphernalia in the Colorado Act. However, we do not consider it necessary or helpful to sever the wording which is found in § 502, the standards provision. We deem it sufficient to consider the Act as a whole, including its objectives. A construction of the Act as a whole removes doubts as to the effect of some of the wording found in it and dictates the construction which we have given to the entire Act.

In summary, it is our conclusion that the standards in question were designed to be a part of the definition of the statute, and, therefore, that the Act, considered in its entirety, shows a legislative intent to make

the eleven standards provided by the Assembly, a part of the definition of the crime.

Accordingly, we conclude that the Act avoids the charge that it is vague, and therefore in violation of the due process clause of the Fourteenth Amendment.

Therefore, we must reverse the judgment of the district court and remand the cause for further proceedings consistent with the analysis contained in this opinion.

It is so ordered.

## APPENDIX
## PART 5

### CONTROL OF DRUG PARAPHERNALIA

**12-22-501. Legislative declaration.** (1) The general assembly hereby finds and declares that the possession, sale, manufacture, delivery, or advertisement of drug paraphernalia results in the legitimization and encouragement of the illegal use of controlled substances by making the drug culture more visible and enticing and that the ready availability of drug paraphernalia tends to promote, suggest, or increase the public acceptability of the illegal use of controlled substances. Therefore, the purposes of this part 5 are:

(a) To protect and promote the public peace, health, safety, and welfare by prohibiting the possession, sale, manufacture, and delivery, or advertisement, of drug paraphernalia; and

(b) To deter the use of controlled substances by controlling the drug paraphernalia associated with their use.

**12-22-502. Definitions.** As used in this part 5, unless the context otherwise requires:

(1) "Controlled substance" means a narcotic drug, as defined in section 12-22-301(16), or a dangerous drug, as defined in section 12-22-403(4).

(2) "Drug paraphernalia" means any machine, instrument, tool, equipment, or device which is primarily adapted, designed, and intended for one or more of the following:

(a) To introduce into the human body any controlled substance under circumstances in violation of the laws of this state;

(b) To enhance the effect on the human body of any controlled substance under circumstances in violation of the laws of this state;

(c) To conceal any quantity of any controlled substance under circumstances in violation of the laws of this state;

(d) To test the strength, effectiveness, or purity of any controlled substance under circumstances in violation of the laws of this state.

**12-22-503. Drug paraphernalia—determination—considerations.** (1) In determining whether an object is drug paraphernalia, a court, in its discretion, may consider, in addition to all other relevant factors, the following:

(a) Statements by an owner or by anyone in control of the object concerning its use;

(b) The proximity of the object to controlled substances;

(c) The existence of any residue of controlled substances on the object;

(d) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons who he knows intend to use the object to facilitate a violation of this part 5;

(e) Instructions, oral or written, provided with the object concerning its use;

(f) Descriptive materials accompanying the object which explain or depict its use;

(g) National or local advertising concerning its use;

(h) The manner in which the object is displayed for sale;

(i) Whether the owner, or anyone in control of the object, is a supplier of like or related items to the community for legal purposes, such as an authorized distributor or dealer of tobacco products;

(j) The existence and scope of legal uses for the object in the community;

(k) Expert testimony concerning its use.

(2) In the event a case brought pursuant to this part 5 is tried before a jury, the court shall hold an evidentiary hearing on issues raised pursuant to this section. Such hearing shall be conducted in camera.

**12–22–504. Possession of drug paraphernalia.** (1) A person commits possession of drug paraphernalia if he possesses drug paraphernalia and intends to use the drug paraphernalia under circumstances in violation of the laws of this state.

(2) Any person who commits possession of drug paraphernalia commits a class 2 petty offense and, upon conviction thereof, shall be punished by a fine of not more than one hundred dollars.

**12–22–505. Manufacture, sale, or delivery of drug paraphernalia—penalty.** Any person who sells or delivers, possesses with intent to sell or deliver, or manufactures with intent to sell or deliver equipment, products, or materials intending that such equipment, products, or materials will be used as drug paraphernalia commits a class 2 misdemeanor and shall be punished as provided in section 18–1–106, C.R.S. 1973.

**12–22–506. Advertisement of drug paraphernalia—penalty.** Any person who places an advertisement in any newspaper, magazine, handbill, or other publication and who intends thereby to promote the sale in this state of equipment, products, or materials designed and intended for use as drug paraphernalia commits a class 2 misdemeanor and shall be punished as provided in section 18–1–106, C.R.S. 1973.