KANSAS RETAIL TRADE COOPERATIVE; Jeffrey Rotter; Menagerie, Inc.; Mother Earth, Inc.; Donald Flesher; Argus, Inc.; Robert Miller; Capers Corner, Inc.; Ben Asner; Sgt. Peppers Parlour, Inc.; Bob Mitchell; Ken Williamson; American Highway, Inc.; Adrian Eakin; Anthony J. Cardarella; Steve Flack; Rocky Nickles; House of Sight & Sound, Ltd.; Tom Headlee; Jerry French; and Tom Dunn, Plaintiffs,

v.

Robert P. STEPHAN; Clark Owens; Michael J. Malone; Nick A. Tomasic; Dennis W. Moore; James R. Modrall; William R. Lorson; Gene M. Olander; Robert Socolossky; Richard E. Lamunyon; Richard R. Stanwix; Allan P. Meyers; Myron E. Scafe; Dwaine Kelsch; John Woody; Fred Howard, III; Alvin D. Johnson; John Carlin; and Joseph G. Shalinsky, Defendants.

Civ. No. 81–1265.

United States District Court,
D. Kansas.

Sept. 18, 1981.

James M. Smith, Denver, Colo., for plaintiffs.

Robert Stephan, Atty. Gen., Kansas Judicial Center, Topeka, Kan., for State of Kansas.

## MEMORANDUM AND ORDER

KELLY, District Judge.

The plaintiffs in this action pray for an order declaring facially unconstitutional Senate Substitute for House Bill No. 2020 (H.B. 2020), which imposes criminal penalties for the manufacture, sale or possession of certain items characterized as drug paraphernalia and simulated controlled substances. Federal jurisdiction for this action is based on 28 U.S.C. § 1343(3) & (4), in that plaintiffs claim under 42 U.S.C. § 1983 that the defendants' actions will violate their rights under the color of state law. The plaintiffs contend jurisdiction is also founded on 28 U.S.C. § 1331. The plaintiffs are composed of a merchants' cooperative, seven corporations, thirteen individuals, and a partnership. In their complaint they have named the Kansas Attorney General and the chiefs of police and the district and county attorneys where the plaintiffs do business. After oral argument on June 25, 1981, the Court denied the plaintiffs' request for a temporary restraining order. Seven days later, on July 2, the parties again appeared on the plaintiffs' request for a preliminary injunction. At this time the parties offered evidence, including testimony by the owners and managers of businesses possibly affected by H.B. 2020 and respective exhibits of possible "drug paraphernalia." At the close of the hearing the Court took the matter under advisement and requested additional legal briefs from the parties. After reviewing legal arguments and the most recent cases regarding this controversial matter, the Court again denies the plaintiffs' request for injunctive relief except for Section Five of H.B. 2020 involving advertising.

### I. Background

At the heart of this case is the constitutional validity of the recent effort of the Kansas Legislature to control and diminish the use of illicit drugs by outlawing items used to ingest and process them and also publications encouraging their use. The Legislature's efforts culminated in the passage of H.B. 2020 which was signed by Governor John Carlin on April 17, 1981, and made effective on July 1, 1981. H.B. 2020 is almost identical to the Model State Drug Paraphernalia Act (Model Act) drafted by the U.S. Justice Department's Drug En-

forcement Administration. Prior to the Model Act several state and local governments had adopted laws banning drug paraphernalia but most suffered from constitutional infirmities due to the difficulty in outlawing items which in most settings are harmless and quite legal, such as mirrors, spoons, smoking pipes and clips. *See, e. g., Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980); *Record Head Corp. v. Sachen*, 498 F.Supp. 88 (E.D.Wis.1980); *Magnani v. City of Ames, Iowa*, 493 F.Supp. 1003 (S.D. Iowa 1980); *Music Stop, Inc. v. City of Ferndale*, 488 F.Supp. 390 (E.D.Mich.1980); *Knoedler v. Roxbury Township*, 485 F.Supp. 990 (D.N.J.1980). The Kansas Supreme Court recently upheld a municipal ordinance which prohibited the sale or display of items identified with the drug culture on premises open to minors. *Cardarella v. City of Overland Park*, 228 Kan. 698, 620 P.2d 1122 (1980).

Since the Model Act was drafted it has been adopted in various forms by several political units and challenges to it have generated three circuit court opinions, including the Tenth Circuit's decision in *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, (10th Cir. 1981). In addition, there are several district court opinions construing Model Act and these cases also will be discussed.

The Kansas version of the Model Act, H.B. 2020, contains nine sections. Section One defines the key terms of the legislation and the most important one is "drug paraphernalia" itself. Subsection (c) defines drug paraphernalia as "all equipment, products and materials of any kind which are used or intended for use in 'growing, processing or ingesting' into the human body a controlled substance in violation of the uniform controlled substances act." Subsection (c) goes on to state that "Drug paraphernalia shall include, but is not limited to," twelve groups of objects which could be used for cultivating, processing or ingesting a controlled substance. The last such group, Subsection (c)(12), is composed of a detailed list of devices for smoking and ingesting marijuana and cocaine.

Section Two of the Kansas Act, which is identical to the DEA's Model Act, sets out fourteen factors which "a court or other authority shall consider, in addition to all other logically relevant factors," in determining whether an item is drug paraphernalia.

Sections Three and Four of the Kansas Act are also identical to the Model Act. Section Three makes it a Class A misdemeanor to use or process to use any simulated controlled substance or drug paraphernalia. Section Four makes it a Class A misdemeanor to "deliver, possess with intent to deliver, manufacture with intent to deliver or cause to be delivered" within Kansas any simulated controlled substance or drug paraphernalia knowing "or under circumstances where one reasonably should know" that it will be used as drug paraphernalia with a controlled substance. However, delivery of drug paraphernalia in this state to a person under the age of eighteen is a Class E felony.

Section Five of the Kansas Act makes it a Class A misdemeanor to advertise the sale of drug paraphernalia within this state when the person placing the advertisement knows, or reasonably should know, that the item for sale is drug paraphernalia. Section Five is similar, though not identical, to the Model Act.

Section Six of the Kansas Act is not included in the Model Act. It makes illegal the delivery in this state of simulated controlled substances. Subsection (b) lists certain factors which would raise a presumption that a reasonable person would believe the material is a controlled substance.

Section Seven of H.B. 2020 provides the mechanism for seizure and civil forfeiture of all drug paraphernalia and simulated controlled substances. Finally, Section Eight allows the severability of unconstitutional sections of the Act so that valid portions can remain effective. The entire Kansas Act, H.B. 2020, is appended to this memorandum opinion for reference.

## II. Plaintiffs' Contentions

In arguing H.B. 2020 is unconstitutional in its entirety, the plaintiffs make the following contentions:

1. The plaintiffs contend the Kansas Act is so vague regarding what is drug paraphernalia that a person of common intelligence would not have fair notice of the criminal activity proscribed.

2. The plaintiffs also contend the Kansas Act's specific intent requirement in the definition of drug paraphernalia does not save the Act from unconstitutional vagueness.

3. The plaintiffs contend that an intent requirement based upon what "one reasonably should know" violates the Fifth Amendment due process clause in that it would allow prosecution based on either the intent of a third party or on a civil negligence theory.

4. In addition, the plaintiffs claim the Kansas Act also violates the Fourteenth Amendment in that it is too vague to guide law enforcement officers called upon to decide whether the Act has been violated.

5. The fourteen factors set out in Section Two of H.B. 2020, which are to be considered by the courts and other authorities in deciding whether an item is drug paraphernalia, are vague and overbroad and consequently would encourage arbitrary and discriminatory enforcement.

6. Section One, Subsection (12) creates a mandatory presumption that an item is drug paraphernalia without an intent requirement by stating that " 'Drug paraphernalia' shall include . . . objects used or intended for use in ingesting . . . marijuana . . . into the human body, such as: (A) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens . . . ." The plaintiffs argue the "shall include" language creates a *per se* violation of the Kansas Act and therefore violates the Fifth Amendment due process requirement.

7. Lastly, the plaintiffs contend the criminal prohibition against advertising drug paraphernalia violates the First Amendment in that Section Five of the Kansas Act is geographically overbroad and unconstitutionally vague.

### III. Preliminary Issues

Certain basic issues have been raised in almost all of the reported drug paraphernalia cases and have been resolved in the same manner. Moreover, the Tenth Circuit's decision in *Hejira Corp. v. MacFarlane*, 660 F.2d 1356, (10th Cir. 1981) is controlling here. The first such issue is whether the plaintiffs have standing to challenge in federal court the constitutionality of H.B. 2020.

The Court notes at the outset that the defendants do not claim the plaintiffs lack standing. In discussing the standing of the plaintiff "head shop" owners to raise constitutional objections to the Colorado drug paraphernalia law, the Tenth Circuit resolved this issue without difficulty:

[T]he plaintiffs may raise the rights of potential purchasers and possessors of drug paraphernalia insofar as those rights are interrelated with the rights of the plaintiffs, and thus involve questions which are properly before the court. Plaintiffs have standing to dispute the constitutionality of the entire Colorado Drug Paraphernalia Act when attacking the validity of the Act on its face.

Id., at 1360. In addition, there need not be an actual criminal prosecution under way in order for the Article III case or controversy requirement to be met so long as the threat of criminal prosecution is not speculative or imaginary. *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). In the case at bar, more than one of the plaintiffs testified they feared criminal prosecution and thus had removed any items which might possibly be considered drug paraphernalia from their stores before H.B. 2020 became effective on July 1, 1981. Consequently, the question of standing must be resolved in the plaintiffs' favor.

Another preliminary issue is whether this Court should abstain from finding federal jurisdiction in order to allow a state court to first consider the case. *Railroad Comm. v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In accord with other courts which have recently con-

sidered this question, we find abstention unwarranted since construction by the state courts would not significantly change the federal constitutional questions, nor are difficult or obscure issues of state law raised. *See Hejira Corp. v. MacFarlane*, 660 F.2d 1356, (10th Cir. 1981); *Casban, Inc. v. Thone*, 651 F.2d 551, 556 n. 6 (8th Cir. 1981); *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 925–26 (6th Cir. 1980), *vacated and remanded*, ── U.S. ──, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981).

▆ Finally, in testing the constitutionality of drug paraphernalia laws, many courts have considered whether they are founded upon a rational basis and have decided this issue affirmatively. Due process requires some rational relationship between the legislation and a legitimate governmental purpose. *See Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124–25, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978); *Franza v. Carey*, 518 F.Supp. 324 (S.D.N.Y. 1981). The reasons for the Model Act, on which H.B. 2020 is based, were stated in the prefatory note to the D.E.A.'s Model Drug Paraphernalia Act and was quoted by the Tenth Circuit when it approved the rational basis for the Colorado drug paraphernalia statutes:

> The availability of drug paraphernalia has reached epidemic levels. An entire industry has developed which promotes, even glamorizes, the illegal use of drugs by adults and children alike. Sales of drug paraphernalia are reported as high as three billion dollars a year.

*Hejira Corp. v. MacFarlane*, 660 F.2d 1356 at 1361. Although this Court was not presented with the legislative history of H.B. 2020, we feel certain the Kansas Legislature was motivated by the goal of decreasing drug use through an attempt to eliminate items it believes are drug paraphernalia. Such legislation is clearly within the state's police power since it affects the public's health and welfare. This Court finds there is connection between drug abuse and the promotion and sale of drug paraphernalia, and consequent-

ly we find there is a rational relationship between H.B. 2020 and a legitimate government purpose. *See Geiger v. City of Eagan*, 618 F.2d 26 (8th Cir. 1980).

### IV. Legal Discussion

#### A. The Vagueness Issue

Due process requires "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Since the plaintiffs claim H.B. 2020 is vague and the Act's specific intent requirement does not prevent it from being vague, the plaintiffs' first two contentions cited above will be treated together. In essence, the plaintiffs argue that since H.B. 2020 bans a myriad number of innocuous common items, such as jewelry, containers, and magazines, the Act is vague regarding what is banned, and the requirement of specific intent does not save the Kansas Act from vagueness. The defendants state H.B. 2020 is not unconstitutionally vague because a person cannot be convicted under the Kansas Act unless it is shown beyond a reasonable doubt that he used drug paraphernalia with a controlled substance or possessed it with the intent to use it with controlled substances. Consequently, since the state would have proved the defendants' specific intent, the Kansas Act is not vague.

▆ A criminal statute which is otherwise vague may be saved by a scienter requirement. *See Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972); *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 934 (6th Cir. 1980), *vacated and remanded* ── U.S. ──, 101 S.Ct. 2998, 69 L.Ed.2d 384. More to the point, in *Hejira Corp.* the Tenth Circuit stated: "To avoid vagueness problems . . . the courts have generally required that the statutory definition of drug paraphernalia include a subjective intent on the part of the possessor or seller." *Id.*, at 1366.

The Colorado drug paraphernalia legislation under scrutiny in *Hejira* required for a violation, after the term "adapted" was stricken, that the offender possessed an item "designed and intended" for use with a controlled substance. The Tenth Circuit determined the words "and intended" would always require a prosecutor to prove a possessor's or seller's intent, and consequently a person could not be convicted for possessing or selling an item which under other circumstances might be considered drug paraphernalia.

Similarly, the Kansas Act, in Section One (c) defines drug paraphernalia as items "used or intended for use" with a controlled substance. In the section defining the violation for possession or use, Section Three, it is clearly stated that: "No person shall use or possess with intent to use" drug paraphernalia. Likewise, Section Four states: "No person shall deliver, possess with intent to deliver, manufacture with intent to deliver or cause to be delivered within this state ..." drug paraphernalia. An item actually being used to ingest, process or cultivate a controlled substance would obviously be drug paraphernalia and the user's intent would be patent. When a person merely possesses, sells or manufactures an item which could be drug paraphernalia, H.B. 2020 clearly requires that he do these acts "with intent" that the items be drug paraphernalia.

■ In addition, when a person actually intends that an item be drug paraphernalia, he has notice of his criminal act and thus the due process notice requirement is satisfied. Consequently, since the Kansas Act requires the intent of the violator for a subjective offense under H.B. 2020, the Court finds the Kansas Act is not unconstitutionally vague regarding the due process notice or intent requisites. The same conclusion was reached regarding the same issues and quite similar legislation by the Sixth Circuit in *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 934 (6th Cir. 1980), although it voided the drug paraphernalia law for other reasons; and by the Tenth Circuit in *Hejira Corp. v. MacFar-*

*lane*, 660 F.2d 1356 at 1367. *See Franza v. Carey*, 518 F.Supp. 324 (S.D.N.Y.1981).

#### B. *The "Transferred Intent" Issue*

■ The plaintiffs argue the proscription in Section Four, Subsection (a), against delivery or manufacture of drug paraphernalia "knowing, or under circumstances where one reasonably should know" the item will be used to ingest, process or cultivate illicit drugs would permit a person to be prosecuted based upon the unknown intent of a third party. In other words, the plaintiffs contend this language allows a prosecutor to "bootstrap" the intent requirement into his case by proving that the ultimate recipient of the item used or intended to use it as drug paraphernalia. Since a seller or manufacturer cannot possibly "know" what the ultimate recipient intends to do with an item innocent by itself, the plaintiffs reason the seller or manufacturer cannot "know" his act is criminal. The same rationale would apply to the "reasonably should know" language in Section Five's prohibition against advertising drug paraphernalia. The Court notes that the Colorado drug paraphernalia law has no similar language, and thus the Tenth Circuit in *Hejira Corp.* did not decide this question.

The Sixth and the Eighth Circuits have gone in opposite directions in deciding this question. In *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 935–36 (6th Cir. 1980), the Sixth Circuit approved the trial court's severance of the "reason to know" language because the appellate court found it too susceptible to misapplication by enforcement officers. The trial court had reasoned that to define "... the offense of knowingly distributing drug paraphernalia in terms of the weakness of an individual's ability to perceive rather than his criminal intent provides insufficient guidance to the distributors covered by this subsection and to those persons charged with the responsibility of enforcing it." *Id.*, 492 F.Supp. 1157, 1174 (N.D.Ohio 1980).

The Eighth Circuit completely disagreed when examining an identical provision in

the Nebraska drug paraphernalia law. *Casbah, Inc. v. Thone*, 651 F.2d 551, 561 (8th Cir. 1981). This appellate court adopted with complete approval the reasoning of the Delaware federal district court regarding this issue:

> In the context of an alleged sale or delivery of drug paraphernalia, the Act requires the state to prove both (1) that the defendant intended that an item would be used for the production or consumption of controlled substances and also (2) that he either knew, or that he acted in a set of circumstances from which a reasonable person would know, that the buyer of the item would thereafter use it for those purposes. So-called constructive knowledge thus has significance only in a situation where the defendant is selling or delivering items that he intends to be used to produce or consume illicit drugs in the first place. The legitimate merchant who sells innocuous items need make no judgment about the purpose of the buyer based upon the surrounding circumstances. The dealer, on the other hand, who sells innocuous items with the intent that they be used with drugs is, in effect, put on notice by the illicit nature of his activity that he must be careful to conform his conduct to the law. Even the illicit dealer, however, is not held legally responsible, as plaintiffs would suggest, for guessing what is in the mind of a buyer. The seller is safe as long as he does not actually know the buyer's purpose and as long as the objective facts that are there for him to observe do not give fair notice that illegal use will ensue.

*Delaware Accessories Trade Assn. v. Gebelein*, 497 F.Supp. 289, 294 (Del.1980). We agree that the question of "constructive knowledge", i. e., what one reasonably should know of a third party's intent, only comes into play where the seller or manufacturer intends in the first place that the items he sells or makes are to be used as drug paraphernalia. Consequently, a prosecutor cannot "bootstrap" or transfer the ultimate buyer's intent to the seller or manufacturer in order to convict the seller or manufacturer under Section Four.

In summary, in order to obtain a conviction under Section Four of H.B. 2020, a prosecutor must prove: (1) that the defendant seller or manufacturer intended the item to be drug paraphernalia; and (2) that the defendant knew, or he *acted under circumstances where one reasonably should know*, that the ultimate buyer would use the item as drug paraphernalia. Essentially all that the "reasonably should know" language demands is that the seller or manufacturer "be required to open his eyes to the objective realities" of his activity. *Mid-Atlantic Accessories Trade v. State of Maryland*, 500 F.Supp. 834, 845 (D.Md.1980). Furthermore, the "reasonably should know" standard or similar standards in criminal statutes have been upheld by the courts when challenged. *See, e. g., Selzman v. United States*, 268 U.S. 466, 45 S.Ct. 574, 69 L.Ed. 1054 (1925); *United States v. Featherston*, 461 F.2d 1119 (5th Cir.), *cert. denied* 409 U.S. 991, 93 S.Ct. 339, 34 L.Ed.2d 258 (1972); *Delaware Accessories Trade Assn. v. Gebelein*, 497 F.Supp. 289, 294 (D.Del. 1980), citing at n. 2 the following criminal statutes: 8 U.S.C. § 1185(a)(2); 15 U.S.C. §§ 78dd–1, 78dd–2, 1397, 1916, 2068, 2614; 18 U.S.C. §§ 491, 922, 954, 1384, 2154, 2251, 2423, 2512; 26 U.S.C. § 999; 42 U.S.C. §§ 263j, 5409; 46 U.S.C. § 1461; 50 U.S.C. § 783. For the above reasons, we find the Kansas Act poses no problem of "transferred intent" and thus this claim of unconstitutionality fails.

## C. *The Claim of Arbitrary and Discriminatory Enforcement*

 The plaintiffs contend the fourteen factors set out in Section Two of H.B. 2020 are too vague to guide law enforcement officials in determining whether the Kansas Act has been violated. Due process requires that a law provide sufficient guides for police and other officials:

> [I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to police-

men, judges and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Since plaintiffs' contentions four and five involve enforcement problems and Section Two, they will be discussed together here.

The defendants argue that this issue is controlled by the Tenth Circuit's decision in *Hejira Corp.* The Colorado drug paraphernalia law considered in that case contained a section derived from the Model Act. Section Two of H.B. 2020 is identical to the latter half of Article I of the Model Act. Section Two of H.B. 2020 provides: "In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other logically relevant factors, the following:"; and at this point fourteen circumstances or factors are listed which serve to guide a decision regarding drug paraphernalia. The Colorado statute, Col.Stat.Ann. 12–22–503, is almost identical, except for the exclusion of prior convictions involving controlled substances, the proximity of the object to a direct violation of the Uniform Controlled Substance Act and the exclusion of evidence regarding the ratio of sales of the objects to total sales of the business enterprise. The sections in the Kansas and Model Act not considered by the Tenth Circuit thus are subsections (b), (c) and (1) of Section Two. These three factors shall be discussed separately.

The Tenth Circuit first noted that due process does not require reasonable persons to always reach the same conclusion when applying objective factors or standards to a given set of facts, and that it would be impossible to define with precision standards for judging drug paraphernalia. *Hejira Corp. v. MacFarlane*, 660 F.2d 1356 at 1367–1368. The appellate court determined the eleven factors in the Colorado Act were "sufficiently positive and concrete" and held

that they were to be employed by the police as well as judges and juries in determining what constituted drug paraphernalia. Furthermore, the Tenth Circuit concluded that these standards or factors to be considered were part of the definition of drug paraphernalia and therefore part of the crime. Since the decision of the Tenth Circuit is clear regarding eleven of the fourteen factors set forth in Section Two of H.B. 2020, we can only agree and likewise hold that these eleven factors are not vague and will prevent arbitrary and discriminatory enforcement by the police.

None of the fourteen factors listed in Section Two create a presumption that a certain item is drug paraphernalia; they are only to be "considered" in making a determination regarding drug paraphernalia. The Tenth Circuit noted in *Hejira Corp.* that "some of the standards may not apply in each and every case." The plaintiffs have pointed out in particular Subsection (1) of Section Two, one of the three factors omitted in the Colorado Act, as being vague. This subsection makes relevant the ratio of sales of the suspect objects to the total sales of the business. The plaintiffs argue this factor would be no help to police since it does not set forth what ratio would be more incriminating. However, a specific numerical ratio would be impossible to set and yet such a consideration would be quite relevant, along with the other listed factors, in identifying drug paraphernalia. "An unchangeable mandate might be lacking in flexibility and workability." *Hejira Corp. v. MacFarlane*, at 1368.

Since the factors listed in Section Two are only considerations, and are "in addition to all other logically relevant factors," they only serve as guides in helping to determine a paraphernalia violation. A more specific definition of Subsection (1) regarding ratio of sales would prove unworkable. Consequently, we do not find Subsection (1) to be vague.

 Subsection (b) makes relevant the prior convictions of a defendant under any

controlled substance law. Under K.S.A. 60–455 prior convictions are inadmissible for the purpose of proving that a defendant committed another crime on a specific occasion. However, K.S.A. 60–455 would admit prior convictions to prove such material facts as motive, opportunity, intent, knowledge, and absence of mistake or accident. Since prior controlled substance convictions would be very relevant concerning such factors as knowledge and intent, Subsection (b) is not constitutionally invalid.

■■ Finally, Subsection (c) makes relevant, in determining whether an object is drug paraphernalia, the proximity of the suspected object in time and space to a direct violation of the Uniform Controlled Substances Act. Although this subsection is not in the Colorado Act, it is in the Kansas and Model Acts. It received the approval of the Eighth Circuit when it approved all fourteen factors in the Nebraska drug paraphernalia law. *Casbah, Inc. v. Thone*, 651 F.2d 551, 560 (8th Cir. 1981). Hypothetically Subsection (c) would cause a law enforcement official or judge to consider the proximity in time and space of a third party making a marijuana sale to sales of smoking accessories by one of the plaintiffs in determining whether the smoking accessories are drug paraphernalia. Consequently, the actions of a third party would be relevant in determining the retailer's intent. However, the prime focus must then be placed on the retailer's intent so that he may not be found guilty by association. This was the main concern of the Sixth Circuit when it found the fourteen relevant factors flawed but not overly broad or vague in *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 933–34 (6th Cir. 1980). We approve Subsection (c) and the other relevant factors in Section Two of H.B. 2020 although we voice the same warnings and concerns expressed by the Sixth Circuit in the above case.

D. *Whether Section One (c)'s "Shall Include" Language Creates Unconstitutional Presumption*

■■ The plaintiffs contend the phrase in Section One (c), that " 'Drug paraphernalia' shall include . . ." certain specific items creates a mandatory presumption that certain lawful objects are drug paraphernalia without any requirement of intent. They argue this part of Section One violates due process in that it would allow an inference of illegality to be drawn from the items listed by themselves.

Section One (c)(1–12) was not adopted from the Model Act when the Colorado Legislature passed its drug paraphernalia law, and consequently this section was not considered by the Tenth Circuit in *Hejira Corp*. After defining "drug paraphernalia" in general terms, the Model Act states: "It [i. e., drug paraphernalia] includes, but is not limited to . . ."; and at this point numerous specific items numbered 1 through 12(a)–(m) are listed. The Kansas Act is substantially the same. After the general definition of drug paraphernalia it states " 'Drug paraphernalia' shall include, but is not limited to . . .", and at this point the same specific items are listed. The above phraseology in the Model Act was adopted and considered by both the Sixth and the Eighth Circuits. The Sixth Circuit concluded the drug paraphernalia law must be read as a whole and that when so read it is clear this section can only read to provide examples of drug paraphernalia. In order to establish a violation, a prosecutor would have to prove the alleged violator's intent. *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 932 (6th Cir. 1980). Consequently, we do not feel that H.B. 2020 creates an irrebuttable presumption regarding drug paraphernalia. The comment section to the Model Act makes it clear the detailed list of objects *"can* fall within the definition of drug paraphernalia if *used " or intended* for use with a controlled substance (emphasis supplied). The drafters of the Model Act did not have in mind the creation of a crime without the requirement of intent.

The Court does not find the Kansas Legislature's inclusion of the word "shall" in Section One (c) is fatal, although it may have been a poor choice of words by the

Kansas Legislature. However, when passing on the constitutionality of a statute, an interpretation supporting its validity is favored by the courts. *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *Hejira Corp. v. MacFarlane*, 660 F.2d 1356 at 1366 (10th Cir. 1981). "Shall" does not strictly signify a mandate of some sort. "Unless the context otherwise indicates the use of the word 'shall' . . . indicates a mandatory intent." C. Sands, Sutherland's Statutory Construction, § 25.04 (4th ed. 1973). Here the context of "shall" clearly does not indicate a mandate when the intent requirements in Sections Three and Four are noted. Use or intent is also a part of the definition of "drug paraphernalia" in Section One. Again, the objects listed in Section One (c) can only be used as examples of possible drug paraphernalia.

### E. The Advertisement Ban and the First Amendment

■ The plaintiffs' final argument is that H.B. 2020's prohibition against placing advertising in newspapers and magazines knowing that the purpose for such is the sale of drug paraphernalia violates the First Amendment. More specifically, they contend Section Five of the Kansas Act is geographically overbroad in that it prohibits advertising in Kansas the sale of objects which are perfectly legal in other states. We note, for example, that Missouri has no drug paraphernalia law. We further note that one of the plaintiffs owns a store in Missouri selling items which might be classified drug paraphernalia, and consequently he has standing to raise this issue. The defendants' reply is that the advertising ban involves commercial speech only and also prohibits illegal activity. Moreover, since the Kansas Legislature has a legitimate interest in preventing the use of controlled substances within its boundaries, the state has the power to ban all advertising despite First Amendment considerations.

Although the Tenth Circuit in *Hejira Corp. v. MacFarlane* considered the advertising ban in the Colorado Act, it is signifi-cantly different from the Kansas Act in that the Colorado Act only prohibits advertisements promoting the sale of drug paraphernalia in Colorado. Again, the Kansas Act would make it illegal to advertise in a Kansas City, Kansas newspaper the sale of an item in Missouri which would be totally legal. Since geographic overbreadth in the Colorado Act was not a problem, *Hejira Corp.* does not control this issue.

■ This Court agrees the Kansas Legislature has a substantial interest in protecting Kansas residents from the social evils associated with the sale of drug paraphernalia. However, the issue is whether Section Five's ban regarding the advertisement in Kansas of the sale of objects legal elsewhere surpasses this state's power and interest to do so. The answer is that Section Five is clearly overbroad. *Bigelow v. Virginia*, 421 U.S. 809, 827–28, 95 S.Ct. 2222, 2235, 44 L.Ed.2d 600 (1975). The Sixth Circuit, in considering a municipal ordinance with essentially the same ban on advertising the sale of drug paraphernalia legal outside the municipality's jurisdiction, reached the same conclusion for the following reasons:

> The cities can legitimately protect their citizens from the use, sale, or manufacture of "drug paraphernalia" within city limits. However, an impenetrable wall against the free flow of commercial speech cannot be erected around the cities' residents. The cities' interest in regulation of advertising is limited to preventing the sale of drug paraphernalia inside their municipal boundaries. Their legitimate interest does not include regulating the information heard or read by their citizens about the availability of legal "drug paraphernalia" in other locales. *Bigelow v. Virginia*, 421 U.S. at 827, 95 S.Ct. at 2235.

*Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 937 (6th Cir. 1980). The Eighth Circuit, in its decision on drug paraphernalia, noted there was merit in this argument but did not decide this issue since none of the plaintiffs in that case had standing to raise it. *Casbah, Inc. v. Thone*, 651 F.2d 551, 564 n.19 (8th Cir. 1981).

H.B. 2020 provides for severability of unconstitutional parts of the Kansas Act when possible:

Sec. 8. If any provisions of this act or the application thereof to any person or circumstances is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provisions or application and, to this end, the provisions of this act are severable.

Since Section Five can be severed from H.B. 2020 without affecting the enforcement of other provisions of the Act, this Court finds it shall be so severed and the remaining sections of the Act shall remain in effect. *See State, ex rel. v. Owens*, 197 Kan. 212, 416 P.2d 259 (1966); *Boyer v. Ferguson*, 192 Kan. 607, 389 P.2d 775 (1964).

In conclusion, since the parties exhaustively briefed and argued the legal issues involved in this case, the Court sees no merit in a third hearing and, therefore, the Court hereby consolidates the preliminary injunction hearing and the trial on the merits. Consequently, this is the final order of the Court in this matter.

ACCORDINGLY, THE COURT FINDS that Section Five of H.B. 2020 is unconstitutional and shall be severed from the remaining effective provisions of H.B. 2020. The defendants are therefore permanently enjoined from enforcing Section Five of the Kansas Act.

IN ADDITION, THE COURT FINDS that the plaintiffs' motion to permanently enjoin the enforcement of the remaining provisions of H.B. 2020 is denied in that the Court finds them constitutionally valid.

### APPENDIX

### CHAPTER 140 *

Senate Substitute for House Bill No. 2020

An Act concerning crimes and punishments; prohibiting certain acts involving drug paraphernalia and simulated controlled substances and prescribing penalties and forfeitures therefor.

*Be it enacted by the Legislature of the State of Kansas:*

Section 1. As used in this act:

(a) "Controlled substance" means any drug, substance or immediate precursor included in any of the schedules designated in K.S.A. 65–4105, 65–4107, 65–4109, 65–4111 and 65–4113, and amendments thereto.

(b) "Deliver" or "delivery" means actual, constructive or attempted transfer from one person to another, whether or not there is an agency relationship.

(c) "Drug paraphernalia" means all equipment, products and materials of any kind which are used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of the uniform controlled substances act. "Drug paraphernalia" shall include, but is not limited to:

(1) Kits used or intended for use in planting, propagating, cultivating, growing or harvesting any species of plant which is a controlled substance or from which a controlled substance can be derived.

(2) Kits used or intended for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances.

(3) Isomerization devices used or intended for use in increasing the potency of any species of plant which is a controlled substance.

(4) Testing equipment used or intended for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances.

(5) Scales and balances used or intended for use in weighing or measuring controlled substances.

(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, which are used or intended for use in cutting controlled substances.

(7) Separation gins and sifters used or intended for use in removing twigs and seeds from or otherwise cleaning or refining marihuana.

(8) Blenders, bowls, containers, spoons and mixing devices used or intended for use in compounding controlled substances.

(9) Capsules, balloons, envelopes and other containers used or intended for use in packaging small quantities of controlled substances.

(10) Containers and other objects used or intended for use in storing or concealing controlled substances.

(11) Hypodermic syringes, needles and other objects used or intended for use in parenterally injecting controlled substances into the human body.

(12) Objects used or intended for use in ingesting, inhaling or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

(A) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads or punctured metal bowls;

(B) water pipes;

(C) carburetion tubes and devices;

(D) smoking and carburetion masks;

(E) roach clips (objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand);

(F) miniature cocaine spoons and cocaine vials;

(G) chamber pipes;

(H) carburetor pipes;

(I) electric pipes;

(J) air-driven pipes;

(K) chillums;

(L) bongs; and

(M) ice pipes or chillers.

(d) "Person" means any individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, association or other legal entity.

(e) "Simulated controlled substance" means any product which identifies itself by a common name or slang term associated with a controlled substance and which indicates on its label or accompanying promotional material that the product simulates the effect of a controlled substance.

Sec. 2. In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other logically relevant factors, the following:

(a) Statements by an owner or person in control of the object concerning its use.

(b) Prior convictions, if any, of an owner or person in control of the object, under any state or federal law relating to any controlled substance.

(c) The proximity of the object, in time and space, to a direct violation of the uniform controlled substances act.

(d) The proximity of the object to controlled substances.

(e) The existence of any residue of controlled substances on the object.

(f) Direct or circumstantial evidence of the intent of an owner or person in control of the object, to deliver it to a person the owner or person in control of the object knows, or should reasonably know, intends to use the object to facilitate a violation of the uniform controlled substances act. The innocence of an owner or person in control of the object as to a direct violation of the uniform controlled substances act shall not prevent a finding that the object is intended for use as drug paraphernalia.

(g) Oral or written instructions provided with the object concerning its use.

(h) Descriptive materials accompanying the object which explain or depict its use.

(i) National and local advertising concerning the object's use.

(j) The manner in which the object is displayed for sale.

(k) Whether the owner or person in control of the object is a legitimate supplier of similar or related items to the community,

such as a distributor or dealer of tobacco products.

(*l*) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise.

(m) The existence and scope of legitimate uses for the object in the community.

(n) Expert testimony concerning the object's use.

Sec. 3. (a) No person shall use or possess with intent to use:

(1) Any simulated controlled substance; or

(2) any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of the uniform controlled substances act.

(b) Violation of this section is a class A misdemeanor.

Sec. 4. (a) No person shall deliver, possess with intent to deliver, manufacture with intent to deliver or cause to be delivered within this state:

(1) Any simulated controlled substance; or

(2) any drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of the uniform controlled substances act.

(b) Except as provided in subsection (c), violation of this section is a class A misdemeanor.

(c) Any person 18 or more years of age who violates this section by delivering or causing to be delivered within this state drug paraphernalia or a simulated controlled substance to a person under 18 years of age and who is at least three years older than the person under 18 years of age to whom the drug paraphernalia or simulated controlled substance is delivered is guilty of a class E felony.

Sec. 5. (a) No person shall place or cause to be placed in any newspaper, magazine, handbill or other publication distributed in this state, or received by mail in this state, any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement, in whole or in part, is to promote the sale of:

(1) A simulated controlled substance; or

(2) objects designed or intended for use as drug paraphernalia.

(b) Violation of this section is a class A misdemeanor.

Sec. 6. (a) No person shall knowingly deliver or cause to be delivered in this state any substance which is not a controlled substance:

(1) Upon an express representation that the substance is a controlled substance or that the substance is of such nature or appearance that the recipient will be able to distribute the substance as a controlled substance; or

(2) under circumstances which would give a reasonable person reason to believe that the substance is a controlled substance.

(b) If any one of the following factors is established, there shall be a presumption that delivery of a substance was under circumstances which would give a reasonable person reason to believe that a substance is a controlled substance:

(1) The substance was packaged in a manner normally used for the illegal delivery of controlled substances.

(2) The delivery of the substance included an exchange of or demand for money or other consideration for delivery of the substance, and the amount of the consideration was substantially in excess of the reasonable value of the substance.

(3) The physical appearance of the capsule or other material containing the substance is substantially identical to a specific controlled substance.

(c) Except as provided in subsection (d), violation of this section is a class A misdemeanor.

(d) Any person 18 or more years of age who violates this section by delivering or causing to be delivered in this state a substance to a person under 18 years of age and who is at least three years older than the person under 18 years of age to whom the delivery is made is guilty of a class E felony.

Sec. 7. (a) All drug paraphernalia and simulated controlled substances are subject to forfeiture as provided in this section.

(b) Property subject to forfeiture under this section may be seized by any law enforcement officer upon process issued by any district court having jurisdiction over the property.

(c) In the event of seizure pursuant to subsection (b), proceedings under subsection (d) shall be instituted promptly.

(d) Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the law enforcement agency seizing it, subject only to the orders of the district court having jurisdiction over the forfeiture proceedings. When property is seized under this section, the law enforcement agency seizing it may:

(1) Place the property under seal;

(2) remove the property to a place designated by it; or

(3) require the state board of pharmacy to take custody of the property and remove it to an appropriate location for disposition in accordance with law.

(e) When property is forfeited under this section the law enforcement agency having custody of it may:

(1) Retain it for official use;

(2) sell that which is not required to be destroyed by law and which is not harmful to the public, with the proceeds to be used for payment of all proper expenses of the proceedings for forfeiture and sale, including expenses of seizure, maintenance of custody, advertising and court costs;

(3) transfer it for medical or scientific use to any state agency;

(4) require the sheriff of the county in which the property is located to take custody of the property and remove it to an appropriate location for disposition in accordance with law; or

(5) forward it to the Kansas bureau of investigation for disposition.

Sec. 8. If any provisions of this act or the application thereof to any person or circumstances is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provisions or application and, to this end, the provisions of this act are severable.

Sec. 9. This act shall take effect and be in force from and after its publication in the statute book.

Approved April 17, 1981.