[Nos. 5179–6–II; 5476–1–II.   Division Two.   October 20, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. GLEN
J. LAUTERBACH, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. JACK
W. TREPTOW, *Appellant.*

*Richard Peterson* and *Robert A. Ellis,* for appellants.

*C. Danny Clem, Prosecuting Attorney,* and *Reinhold Schuetz, Deputy,* for respondent.

PETRIE, J.—Glen J. Lauterbach and Jack W. Treptow appeal separate convictions under the so-called "burn" statute, RCW 69.50.401(c).[1] Lauterbach was found guilty by jury verdict, and Treptow was convicted at a bench trial. Both cases were consolidated following the appeals. Both defendants contend that RCW 69.50.401(c) is ambiguous, vague and overbroad and that the State failed to meet its burden to prove beyond a reasonable doubt every element of the crime charged. In addition, Treptow contends the trial court erred by denying his Motion for Discovery and Lauterbach contends the trial court improperly instructed the jury. We affirm both convictions.

We consider first the defendants' challenges to the constitutionality of RCW 69.50.401(c). The statute withstood constitutional challenges in *State v. Wilson,* 95 Wn.2d 828, 631 P.2d 362 (1981) and *State v. Prather,* 30 Wn. App. 666, 638 P.2d 95 (1981). Both defendants contend there are sufficient factual differences in their respective cases to distinguish them from *Wilson* and *Prather* and to require reexamination of the statute's constitutionality.

Treptow and Lauterbach were convicted because the triers of fact determined that they agreed to sell a controlled substance and subsequently sold a substance which

---

[1] RCW 69.50.401(c) provides:

"(c) It is unlawful, except as authorized in this chapter and chapter 69.41 RCW, for any person to offer, arrange, or negotiate for the sale, gift, delivery, dispensing, distribution, or administration of a controlled substance to any person and then sell, give, deliver, dispense, distribute, or administer to that person any other liquid, substance, or material in lieu of such controlled substance. Any person who violates this subsection is guilty of a crime and upon conviction may be imprisoned for not more than five years, fined not more than ten thousand dollars, or both."

is not controlled. In both cases the undercover purchaser indicated a desire to purchase and the defendant seller agreed to sell "speed." Both defendants assert, and introduced evidence to prove, that in the present drug culture when "speed" is bought and sold, the understanding between both parties is that the subject of the contract is not necessarily a controlled substance. Accordingly, defendants contend, when the statute is applied to that set of facts it denies constitutional due process guaranteed by the state and federal constitutions.

Defendant Lauterbach puts the argument in this manner:

From the language of the Washington statute it is unclear whether the statute was enacted to make it a crime to intentionally agree to deliver a controlled substance and then unintentionally deliver a non-controlled substance, or whether the statute was enacted to make it a crime to intentionally agree to deliver a controlled substance and then intentionally substitute a non-controlled substance, or whether it was enacted to cover both situations.

Defendant Treptow states the proposition somewhat differently:

It can not be held that an offer to sell or deliver "speed" is a per se offer to sell or deliver a controlled substance.

It is insufficient to prove that "speed" *sometimes* means a controlled substance. If that were the case, the statute would be impermissably [sic] vague because it would not give fair notice of the conduct forbidden. *State v. Jordon* [sic], 91 Wn.2d 386, [588] P.2d 1155 (1979). If "speed" means and is used to mean both controlled and non-controlled substances then the State has failed to meet its burden of proving beyond a reasonable doubt that the Defendant intended to "offer, arrange or negotiate" the sale of a controlled substance.

(Italics ours.)

■■ The answer to Lauterbach's suggested dilemma is that the Legislature declared each situation sufficiently antisocial to warrant its classification as a crime. The answer to Treptow's argument is that, when the statute is applied to a sale of·"speed" the burden is upon the prose-

cution to prove that the accused did "offer, arrange, or negotiate for the sale, gift, delivery, dispensing, distribution, or administration of a controlled substance", *i.e.,* that the substance offered or negotiated for sale was that variety of "speed" which is controlled.

To answer both defendants, it is immaterial whether the defendant knew or did not know that the substance ultimately delivered was *not* a controlled substance. Such is the essence of the court's holding in *State v. Wilson, supra.*

The mens rea of the crime lies in the accused's offering, arranging, or negotiating for the sale of a controlled substance. That is an essential element of the crime. It might be more appropriate to state that that is the essential prerequisite to the commission of the crime. The crime has not been committed, however, until the accused, subsequent to the previous arrangement, does actually "sell, give, deliver, dispense, distribute, or administer" the noncontrolled substance to another person. At that point in time it is immaterial whether the accused knew or did not know whether the substance delivered was not a controlled substance.

As applied to these defendants, we find the statute neither vague, ambiguous, nor overbroad. Defendants are put on notice that, if they offer to sell a controlled substance to another and then either knowingly or unwittingly deliver a noncontrolled substance, they have at that point committed a crime. They answer, in effect, that they only *intended* to sell the kind of "speed" that is noncontrolled. What they may have *intended* to accomplish is immaterial. The gravamen of the crime lies not in their intent to sell a substance, controlled or noncontrolled, but rather in their intent to bargain for, *i.e.,* to offer, arrange, or negotiate for, the sale of a controlled substance, which sale ultimately results in delivery of a noncontrolled substance.

Given the present state of the drug culture, it may well be a practical impossibility for a buyer to know what he receives when a sale is made to him, but it is not impossible for a seller to know what he is bargaining for. Indeed, as stated in *Wilson,* 95 Wn.2d at 834, "It is impossible for one

to contract for the delivery of a controlled substance without knowing what he is doing, . . ." If a seller offers, arranges, or negotiates for the sale of a noncontrolled substance (and subsequently delivers a noncontrolled substance), he has not committed the crime defined under RCW 69.50.401(c).

Thus, in Lauterbach's case, it was not error for the trial court to refuse to instruct the jury, as Lauterbach had proposed, that "the State must prove beyond a reasonable doubt that Glen Lauterbach intended to sell a controlled substance." The trial court, in the "to convict" instruction, had already properly told the jury that one of the elements which must be proved beyond a reasonable doubt was that on June 26, 1980, "defendant offered, arranged, or negotiated for the sale, gift, delivery, or distribution, of a controlled substance to another person," and that "Amphetamine and Methamphetamine are controlled substances."

Similarly, in Treptow's case, the trial court's findings of fact, if supported by the evidence, supported the court's conclusion of law that Treptow "committed the offense" defined in RCW 69.50.401(c). These findings included the facts that on May 18, 1980 defendant Treptow "arranged and negotiated" with the undercover agent for the "sale and delivery" of what the defendant described as "speed"; that "speed" is a common "street" name for amphetamines; that the agreed price "was commensurate with the street price for amphetamines"; that before delivery of the substance, defendant stopped at a grocery store "so that he could exchange the twenty dollar bill given to him . . . for other currency which he could be assured was not marked in any way, shape or form"; that defendant then proceeded to another location "and gave, delivered and distributed" to the undercover officer 100 tablets which "had an appearance identical to amphetamines sold illegally" on the "street" in tablet form; and that those tablets, when subsequently tested, "contained no controlled substance."

That brings us to consideration of both defendants' con-

tention that the evidence in each of their cases was insufficient to prove the commission of the crime.

Here, Lauterbach's primary contention is that the trial court erred by not instructing, as requested, that "the State must prove beyond a reasonable doubt that 'speed' is a controlled substance." Similarly, Treptow primarily attacks the trial court's finding:

> That "speed" is a common "street" name for a controlled substance, to-wit: amphetamines.

In both cases, the record contains much evidence that most of the "speed" sold on the "street" is the noncontrolled variety. Indeed, in Treptow's case, the Kitsap County Deputy Sheriff assigned to the narcotics unit testified, "I would venture to say 95 percent of our cases are burn speed." Nevertheless, there are clear indications in both records that amphetamines are also sold on the "street" when "speed" is bargained for. Thus, in Lauterbach's case, the jury could well have found him not guilty on the strength of his testimony that when he encountered the undercover agent, Mr. Lowney, and another person, the conversation concerning the "use of the term speed" was as follows:

A It might have come out once or twice. I don't think I did at all. I told Mr. Lowney what they were, because he says he knows it all, and stuff. So, I just told him they were like diet pills, and I explained it like that. I knew that they were not a big, dangerous drug or something, you know, because I was not worried by having them.

Q Did you know that they were a controlled substance?

A No, they weren't. The girl I had gotten them from had told me that they were a diet pill like a No-Doz. So, I was not really worried about having them.[2]

---

[2]Lauterbach also testified:

A They came in and they wanted speed, and I was kind of upset because he brought somebody over to my house, you know. And, anyway, the conversation led on and he wanted this; he asked me if it was good stuff, and I told him that it was, and then Mr. Lowney had wanted them. So, we went into my room and I told Mr. Lowney I didn't appreciate him bringing anybody

The jury simply believed the State's evidence and disbelieved Lauterbach's; and the trial court in Treptow's case simply found the State's proof sufficient to establish the commission of the crime beyond a reasonable doubt. Nonetheless, defendants assert that it is insufficient to prove that "speed" *sometimes* means a controlled substance. They find comfort in a recent opinion of another division of this court, *State v. Keating*, 30 Wn. App. 829, 638 P.2d 624 (1981).

In *Keating* the court reversed a conviction and dismissed a charge of violation of RCW 69.41.030, possession of a legend drug. We do not necessarily subscribe to everything stated in *Keating*, but it seems clear that through the testimony of a laboratory technician the State proved only that the tablets found in Keating's possession contained ephedrine, but the technician failed to state that the tablets were prescription drugs and thereby a controlled substance. The state board of pharmacy had promulgated a rule which declared that no person shall distribute ephedrine except upon written prescription, but thereupon exempted from the regulation some 27 commercially available products which contained ephedrine in varying amounts. RCW 69.41.010(8) provides in part that a legend drug is any drug which the pharmacy board has declared by regulation can be dispensed on prescription only.

The court in *Keating* held that the State's proof was insufficient to present the issue of Keating's guilt to the jury, stating in part that the exemptions are so numerous that they necessarily constitute a material part of the description of the offense and that it would be arbitrary and irrational to insist that prima facie evidence of guilt had been established simply by proof that the tablets con-

---

over to my house. I knew about Mr. Lowney and his background, and so I didn't really trust Mr. Lowney myself. So, I'm not going to trust anybody that he brings over to my house. And, I gave them to Mr. Lowney in my room, they were sitting there on my counter. And, he had brought them out and gave them to the guy, and the guy gave Mr. Lowney the money, and Mr. Lowney handed me over the money.

tained ephedrine when so many tablets which contain ephedrine are exempt from the regulation's prescription requirement. The court concluded by stating that "The State must . . . prove the tablet is not one of the permitted 27 exempted products." *State v. Keating*, 30 Wn. App. at 833.

We find no fault with the result reached in *Keating*. The opinion does not, however, assist defendants Lauterbach and Treptow. In their cases, the State had to and did prove by the totality of the circumstances of the sales that both defendants did "offer, arrange, and negotiate" for the sale of a controlled substance, namely, amphetamine, which by statute is a controlled substance. The evidence in their cases was sufficient to permit the triers of fact to find beyond a reasonable doubt that they did offer, arrange, or negotiate for the sale of amphetamine.

Finally, defendant Treptow assigns as error the trial court's denial of his motion to require the prosecuting attorney and Sheriff of Kitsap County to disclose to the defense substantial files in their possession which would indicate that substantial numbers of controlled sales in Kitsap County over a protracted period of time resulted in "burn" speed having been purchased when the term "speed" was used by agents to make the buy. We find no error. The scope of discovery is a matter entirely within the sound discretion of the trial court. *State v. Greene*, 15 Wn. App. 86, 546 P.2d 1234, *review denied*, 87 Wn.2d 1004 (1976). Furthermore, Treptow obtained all that he sought. As indicated above, a deputy sheriff testified that 95 percent of the efforts to buy "speed" resulted in the purchase of "burn speed."

Judgment affirmed.

REED, C.J., and PETRICH, J., concur.

Reconsideration denied November 18, 1982.

Review denied by Supreme Court January 7, 1983.