(684 P.2d 459)

No. 55,793

STATE OF KANSAS, *Appellee,* v. DEBORAH MARSH, *Appellant.*

Opinion filed July 12, 1984.

*Douglas J. Walker,* of Overland Park, for the appellant.

*Paul J. Morrison,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Dennis W. Moore,* district attorney, for the appellee.

Before SWINEHART, P.J., REES, J., and HARRY G. MILLER, District Judge Retired, assigned.

MILLER, J.: The defendant has appealed her conviction of delivering a noncontrolled substance under circumstances which would give a reasonable person reason to believe that the substance was a controlled substance, in violation of K.S.A. 1983 Supp. 65-4155(a)(2).

On March 9, 1982, undercover narcotics officer Darrell Conrad of the Overland Park Police Department met with a person named Thomas McKeon inside an Overland Park tavern called "The Annex." During the meeting, he arranged to purchase one

hundred "black beauties." The terms "speed" and "black beauties" are known to refer to amphetamines, a controlled substance. The officer paid McKeon $40 at the time with the understanding that the amphetamines would be delivered the next day.

The next afternoon, Officer Conrad returned to The Annex. The defendant, Deborah Marsh, was working as the bartender. Thomas McKeon was not there. After seating himself and ordering a beer, Officer Conrad was approached by the defendant, who said "I've got a package for you." She then opened a pocket on her jacket permitting the officer to see a baggie, and the officer then motioned defendant to go outside with him.

Outside, defendant handed the officer a baggie containing black capsules and stated that McKeon had grown tired of waiting and had given her the baggie with instructions to deliver the same to Conrad when he arrived. After the delivery, the officer asked defendant how many capsules were in the bag, and defendant replied that she didn't know, adding "that she finds speed every now and then on the floor when she cleans up the establishment."

William Chapin, a chemist with the Johnson County Crime Laboratory, testified that the black capsules were very similar in appearance to black capsules known as "black beauties," a prescription drug containing a slow-releasing kind of amphetamine preparation. After testing Chapin concluded that the capsules delivered by the defendant contained no controlled substances. He further testified that it would be difficult for the average layman to tell the difference between the capsules delivered and "real" amphetamines.

A jury found the defendant guilty of delivering a noncontrolled substance under circumstances that would cause a reasonable person to believe that the substance was a controlled substance.

Defendant argues on appeal that the trial court erred in instructing under K.S.A. 1983 Supp. 65-4155(a)(2).

The pertinent parts of the statute under which the court instructed are:

"(a) No person shall knowingly deliver or cause to be delivered in this state any substance which is not a controlled substance:

. . . .

"(2) under circumstances which would give a reasonable person reason to believe that the substance is a controlled substance.

"(b) If any one of the following factors is established, there shall be a presumption that delivery of a substance was under circumstances which would give a reasonable person reason to believe that a substance is a controlled substance:

. . . .

"(3) The physical appearance of the capsule or other material containing the substance is substantially identical to a specific controlled substance."

The Drug Paraphernalia Act, K.S.A. 1983 Supp. 65-4150 *et seq.*, was enacted by the Kansas Legislature in 1981, and was based on the Model State Drug Paraphernalia Act drafted by the United States Justice Department's Drug Enforcement Administration. *Kansas Retail Trade Co-Op. v. Stephan*, 522 F. Supp. 632 (D. Kan. 1981), *aff'd in part, rev'd in part*, 695 F.2d 1343 (10th Cir. 1982).

The trial court utilized PIK Crim. 2d 67.20 in instructing:

"The defendant is charged with the crime of knowingly delivering or causing to be delivered a noncontrolled substance under circumstances that it would appear to be amphetamines. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant knowingly delivered or caused to be delivered in Kansas a substance which was not amphetamines;

"2. That the delivery of the noncontrolled substance was made under circumstances that would cause a reasonable person to believe the substance was amphetamines; and

"3. That this act occurred on or about the 10th day of March, 1982, in Johnson County, Kansas."

The defendant argues that there was no evidence to support the instruction since the evidence was that only an expert could tell what the capsules contained, and that in order to convict under K.S.A. 1983 Supp. 65-4155, the State must prove that the defendant *knew* that the item was not a controlled substance when she delivered it.

Several courts have discussed the purposes of statutes prohibiting the unlawful or fraudulent delivery of noncontrolled substances. A California Appeals Court stated that its statute was designed "to discourage 'anyone from engaging or appearing to engage in the narcotics traffic' (*People v. Shepard*, 169 Cal. App. 2d [283] at p. 288 [337 P.2d 214 (1939)]), rather than to define the contractual rights of the pusher and his victim . . . ." *People v. Ernst*, 48 Cal. App. 3d 785, 791-92, 121 Cal. Rptr. 857 (1975).

The Supreme Court of Illinois similarly held:

"The legislature might reasonably have assumed that when an individual purports to unlawfully furnish or arrange the sale of narcotic drugs he is participating in the illicit trade whether or not the substance he sells and furnishes is in fact a narcotic. By holding himself out as a source of supply he is encouraging the purchaser to continue his unlawful habit and, in selling a non-narcotic substance, the peddler is realizing funds which in many instances will be used to further actual narcotics traffic." *The People v. Calcaterra,* 33 Ill. 2d 541, 545, 213 N.E.2d 270, 272 (1965), *appeal dismissed and cert. denied* 385 U.S. 7 (1966).

Since Kansas already had an act to punish drug trading, K.S.A. 65-4127a *et seq.,* it appears obvious that when the legislature enacted the Drug Paraphernalia Act, one of the purposes of the act was to punish any appearance of drug trading in order to discourage narcotics traffic in general.

While this is a question of first impression in this state, two other states have construed their statutes prohibiting the fraudulent delivery of a noncontrolled substance as not requiring proof of a specific intent to deliver a noncontrolled substance. In *State v. Lauterbach,* 33 Wash. App. 161, 164, 653 P.2d 1320 (1982), the court held:

"The mens rea of the crime lies in the accused's offering, arranging, or negotiating for the sale of a controlled substance. That is an essential element of the crime. It might be more appropriate to state that that is the essential prerequisite to the commission of the crime. The crime has not been committed, however, until the accused, subsequent to the previous arrangement, does actually 'sell, give, deliver, dispense, distribute, or administer' the noncontrolled substance to another person. At that point in time it is immaterial whether the accused knew or did not know whether the substance delivered was not a controlled substance."

See also *People v. McDaniel,* 24 Cal. 3d 661, 156 Cal. Rptr. 865, 597 P.2d 124 (1979); *People v. Lechlinski,* 60 Cal. App. 3d 766, 131 Cal. Rptr. 701 (1976); *State v. Wilson,* 95 Wash. 2d 828, 631 P.2d 362 (1981).

It is a fundamental rule that penal statutes must be strictly construed. *State v. Loveland,* 8 Kan. App. 2d 196, 653 P.2d 472 (1982), *rev. denied* 232 Kan. 876 (1983). Giving the language of the statute its fair meaning, we hold that in order to convict under K.S.A. 1983 Supp. 65-4155, the State must prove that there was a *knowing delivery* of a substance which later proves to be a noncontrolled substance under circumstances that satisfy either (*a*) (1) or (*a*) (2) of the statute. The fact that the defendant did not know the substance was noncontrolled, or may have in good faith

believed the substance to be a controlled substance, is not a defense.

The court further instructed the jury that:

"There is a presumption that delivery of a substance was under circumstances which would give a reasonable person reason to believe that a substance is a controlled substance if the physical appearance of the capsule or other material containing the substance is substantially identical to a specific controlled substance."

The defendant contends that the court erred in failing to instruct the jury that such a presumption does not shift the burden of proof to the defendant.

Since Mr. Chapin testified that the black capsules delivered by the defendant were very similar in appearance to prescription capsules called "black beauties," the trial court was warranted in instructing the jury as to the presumption set forth in K.S.A. 1983 Supp. 65-4155(b)(3). Defendant failed at trial to object to the instruction on the grounds now argued. We will not reverse the trial court for its failure to advise the jury that such presumption is rebuttable and does not shift the burden of proof, unless that failure was clearly erroneous. *State v. Cantrell,* 234 Kan. 426, 673 P.2d 1147 (1983).

The rule in this state is set forth in *State v. Johnson,* 233 Kan. 981, 986, 666 P.2d 706 (1983), wherein the court held:

"We adhere to our prior decisions that a rebuttable statutory presumption constitutes a rule of evidence and is constitutional; however, under the pronouncements of *Sandstrom [v. Montana,* 442 U.S. 510, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979)] and [*Connecticut v.] Johnson* [460 U.S. 73, 74 L.Ed.2d 823, 103 S.Ct. 969 (1983)], the jury must be clearly instructed as to the nature and extent of the presumption and that it does not shift the burden of proof to the defendant. Any instruction which may reasonably lead the jury to believe that a presumption is conclusive or that the burden to disprove an element of the crime rests with the defendant is unconstitutional."

See also *Connecticut v. Johnson,* 460 U.S. 73, 74 L.Ed.2d 823, 103 S. Ct. 969 (1983).

Under the circumstances here, the jury might reasonably have believed that the defendant had the burden of presenting evidence to disprove the presumption and that upon failure to do so the presumption was conclusive. The court committed reversible error in not instructing the jury that the presumption did not shift the burden of proof on such issue to the defendant.

Finally, defendant contends that the statute is unconstitution-

ally vague in that it fails to advise a reasonable person of what conduct offends the law.

The Kansas Drug Paraphernalia Act has withstood constitutional challenges of being void for vagueness, *Kansas Retail Trade Co-Op. v. Stephan,* 695 F.2d 1343; *State v. Dunn,* 233 Kan. 411, 662 P.2d 1286 (1983), although the particular language of 65-4155 was not specifically considered in either opinion. The Delaware Supreme Court found a similar challenge to its statute to be without merit. *Glendon v. State,* 461 A.2d 1004 (Del. 1983).

The basic principles governing review of such an argument are reviewed in *State v. Cantrell,* 234 Kan. 426. Applying those principles we are persuaded that giving the language of the statute its fair meaning, an ordinary person would have no problem understanding what conduct is proscribed by the statute. The statute is not unconstitutionally vague.

In summary, we hold that a conviction for violation of K.S.A. 1983 Supp. 65-4155(*a*)(2) requires proof of knowing delivery but does not require proof of knowledge the delivered substance was not a controlled substance or proof of specific intent to deliver a noncontrolled substance; that 65-4155 is not unconstitutionally vague; and that the trial court erred in failing to instruct that the presumption directed by 65-4155(*b*)(3) did not shift to the defendant the burden of proof on the issue.

Reversed and remanded for a new trial.